**PILLSBURY WINTHROP SHAW PITTMAN LLP**
Andrew M. Troop, Esq.
Christopher R. Mirick, Esq.
1540 Broadway
New York, New York 10036
Telephone:  (212) 858-1000
Facsimile:  (212) 858-1500

*Attorneys for Appellee Lyondell Chemical Company*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| LYONDELL CHEMICAL COMPANY, et al., | |
| Post-Confirmation Debtors. | Jointly Administered |
| C.A. BALDWIN and ANN L. BALDWIN, | |
| Appellants, | Case No. 13-cv-3881 (RA) |
| v. | |
| LYONDELL CHEMICAL COMPANY, et al. | |
| Appellee. | |

**BRIEF OF APPELLEE LYONDELL CHEMICAL COMPANY**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  BASIS OF APPELLATE JURISDICTION ................................................................. 1

II. STATEMENT OF THE ISSUES AND STANDARD OF REVIEW ..................... 1

    A.  STATEMENT OF THE ISSUES ............................................................. 1

    B.  STANDARD OF REVIEW .......................................................................... 2

III. STATEMENT OF THE CASE .................................................................................. 2

IV. STATEMENT OF THE FACTS ............................................................................... 5

    A.  The Settlement Agreement and the Lyondell Bankruptcy ........................... 5

    B.  The 2009 Baldwin Adversary ....................................................................... 7

    C.  The Baldwins' Assumption Motion, the Plan, and Claim 280692 .................. 9

    D.  The Baldwins' Motion to Enforce and Attempted Interlocutory Appeal ...... 12

    E.  The Order to File a Complaint & the 2012 Baldwin Adversary ................... 15

V.  ARGUMENT ........................................................................................................... 18

    A.  THE BALDWINS' ADMINISTRATIVE EXPENSE REQUEST WAS SUBJECT TO BANKRUPTCY COURT REVIEW ...................................... 18

      1.  Lyondell timely objected to Claim 280692 ................................................ 20

      2.  Lyondell's objections were procedurally valid .......................................... 27

    B.  THE BALDWINS ARE NOT ENTITLED TO PAYMENT OF AMOUNTS ACCRUING FROM OCTOBER 1, 2009 THROUGH THE REJECTION DATE BECAUSE THEY CEASED TO KEEP THE SETTLEMENT AGREEMENT CONFIDENTIAL ...................................................................... 34

    C.  THE BALDWINS ARE NOT ENTITLED TO INTEREST ...................... 37

    D.  THE BANKRUPTCY COURT CORRECTLY DISMISSED THE BALDWINS' CLAIMS RELATING TO THE FAILURE TO PROVIDE THE LETTER OF REFERENCE ................................................................................ 39

      1.  *Twombly* and *Iqbal* apply to the 2012 Amended Complaint .................... 40

      2.  The Amended Complaint failed to meet the *Twombly* and *Iqbal* requirements .............. 43

      3.  Lyondell did not waive the defects in the Baldwins pleadings .................. 48

VI. CONCLUSION ....................................................................................................... 49

i

# **TABLE OF AUTHORITIES**

## **Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S.Ct. 1937 (2009)................................................................ passim

*Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.*,
    348 S.W.3d 894 (Tex. 2011),
    *reh'g denied* (Oct. 21, 2011)............................................................................. 45

*Bejleri v. Gonzales*,
    181 F. App'x 60 (2d Cir. 2006) ......................................................................... 20

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................ passim

*Guaranty Nat'l Ins. Co. v. Greater Kansas City Transp., Inc.*,
    90 B.R. 461 (D. Kan. 1988)............................................................................... 19

*Hayden v. Paterson*,
    594 F.3d 150 (2d Cir. 2010) .............................................................................. 43

*In re 1031 Tax Grp., LLC*,
    439 B.R. 84 (Bankr. S.D.N.Y. 2010)................................................................. 38

*In re Ampace Corp.*,
    279 B.R. 145 (Bankr. D. Del. 2002)................................................................. 27

*In re Bruno Mach. Corp.*,
    435 B.R. 819 (Bankr. N.D.N.Y. 2010) .............................................................. 38

*In re Calpine Corp.*,
    356 B.R. 585 (S.D.N.Y. 2007)............................................................................. 2

*In re Clausen*,
    464 B.R. 827 (Bankr. W.D. Wis. 2011)...................................................... 29, 31

*In re Dana Corp.*,
    2008 WL 2885901 (Bankr. S.D.N.Y. 2008).................................................32-33

*In re Dreier LLP*,
    452 B.R. 391 (Bankr. S.D.N.Y. 2011)............................................................... 42

*In re Drexel Burnham Lambert Group, Inc.*,
    134 B.R. 482 (Bankr. S.D.N.Y. 1991)............................................................... 46

*In re Durham*,
    260 B.R. 383 (Bankr. D.S.C. 2001)................................................................... 30

*In re Enron Creditors Recovery Corp.*,
    370 B.R. 90 (Bankr. S.D.N.Y. 2007)................................................................. 33

*In re Garvida*,
    347 B.R. 697 (B.A.P. 9th Cir. 2006) ................................................................. 33

*In re Hechinger Inv. Co. of Delaware, Inc.*,
    489 F.3d 568 (3d Cir. 2007) ................................................................. 38

*In re Ionosphere Clubs, Inc.*,
    208 B.R. 812 (S.D.N.Y. 1997) ............................................................. 26

*In re Johns-Manville Corp.*,
    920 F.2d 121 (2d Cir. 1990) ................................................................. 26

*In re Joint E. & S. Dist. Asbestos Litig.*,
    982 F.2d 721 (2d Cir. 1992) *opinion modified on reh'g*, 993 F.2d 7 (2d Cir. 1993).............. 26

*In re M.J. Waterman & Associates, Inc.*,
    227 F.3d 604 (6th Cir. 2000) ............................................................... 32

*In re Mack*,
    132 B.R. 484 (Bankr. M.D. Fla. 1991) ................................................ 31

*In re Morgan*,
    48 B.R. 148 (Bankr. D. Md. 1985) ....................................................... 19

*In re Philadelphia Mortg. Trust*,
    117 B.R. 820 (Bankr. E.D. Pa. 1990) .................................................. 19

*In re PT-1 Commc'ns, Inc.*,
    386 B.R. 402 (Bankr. E.D.N.Y. 2007) ................................................ 19

*In re Silvus*,
    329 B.R. 193 (Bankr. E.D. Va. 2005) .................................................. 19

*In re Tower Automotive, Inc.*,
    No. 05-10578 (ALG) (Bankr. S.D.N.Y. June 29, 2007)...................... 47

*In re Trinsum Group, Inc.*,
    460 B.R. 379 (Bankr. S.D.N.Y. 2011) ................................................ 42

*In re Victory Markets, Inc.*,
    221 B.R. 298 (B.A.P. 2d Cir. 1998)..................................................... 28

*In re W.S. Sheppley & Co.*,
    62 B.R. 271 (Bankr. N.D. Iowa 1986) ................................................ 39

*In re WorldCom, Inc.*,
    308 B.R. 157 (Bankr. S.D.N.Y. 2004).................................................. 46

*Matter of Pence*,
    905 F.2d 1107 (7th Cir. 1990) .............................................................. 31

*Matter of Southland Corp.*,
    160 F.3d 1054 (5th Cir. 1998) .............................................................. 38

*McCrary v. Barnett (In re Sea Island Co.)*,
    486 B.R. 559 (S.D. Ga. 2013) .............................................................. 27

*Norwest Bank Worthington v. Ahlers*,
    485 U.S. 197 (1988).............................................................................. 27

*Supplee v. Bethlehem Steel Corp. (In re Bethlehem Steel Corp.)*,
   479 F.3d 167 (2d Cir. 2007) ......................................................................... 46

*Travelers Indem. Co. v. Bailey*,
   557 U.S. 137 (2009) ...................................................................................... 27

*Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.*,
   789 F.2d 98 (2d Cir. 1986) ....................................................................... 46, 47

*Wickham Contracting Co., Inc. v. Local Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO*,
   955 F.2d 831 (2d Cir. 1992) ........................................................................ 38

*Williams v. IMC Mortgage Co. (In re Williams)*,
   246 B.R. 591 (B.A.P. 8th Cir. 1999) ........................................................... 19

## Statutes and Codes

United States Code Annotated
   Title 28, Section 2111 ................................................................................. 33

United States Code
   Title 11, Section 101(5) ............................................................................... 37
   Title 11, Section 363(c)(1) ............................................................................ 9
   Title 11, Section 365(b) ................................................................................. 9
   Title 11, Section 365(d)(4) ........................................................................... 25
   Title 11, Section 502(f) ................................................................................ 45
   Title 11, Section 503(b)(1)(A) ......................................................... 17, 45, 46
   Title 11, Section 523(a) ................................................................................. 7
   Title 11, Section 544 .................................................................................... 38
   Title 11, Section 545 .................................................................................... 38
   Title 11, Section 547 .................................................................................... 38
   Title 11, Section 548 .................................................................................... 38
   Title 11, Section 549 .................................................................................... 38
   Title 11, Section 550(a) .......................................................................... 37, 38
   Title 11, Section 553(b) ............................................................................... 38
   Title 11, Section 724(a) ............................................................................... 38
   Title 28, Section 158(a)(1) ............................................................................. 1

## Rules and Regulations

Federal Rules of Bankrupcty Procedure
   Rule 3007(a) ................................................................................................ 30
   Rule 7008 ............................................................................................. passim
   Rule 7009 ..................................................................................................... 15
   Rule 7012 ................................................................................................. 2, 15
   Rule 9009 ..................................................................................................... 29
   Rule 9014 ....................................................................................................... 2

Federal Rules of Civil Procedure
  Rule 8 ................................................................................................................ 42

## Other Authorities

Black's Law Dictionary (9th ed. 2009) ........................................................... 34

Board of Governors of the Federal Reserve System
  Selected Interest Rates, Historical Data at
  http://www.federalreserve.gov/releases/h15/data.htm ............................ 39

Appellee Lyondell Chemical Company ("Lyondell") submits this brief in response to the Opening Brief of Appellants C.A. Baldwin and Ann L. Baldwin (the "Baldwin Brief"). Capitalized terms used but not otherwise defined herein are defined in accordance with their usage in the Baldwin Brief.  Following the convention adopted by Appellants C.A. Baldwin and Ann L. Baldwin (the "Baldwins"), the appellate record designated by the Baldwins is referred to as "R" and the appellate record counter-designated by Lyondell is referred to as "CD R" herein.

## I.

## BASIS OF APPELLATE JURISDICTION

The Baldwins have appealed from the Bankruptcy Court's Order Denying Motion to Enforce the Confirmation Order and the Third Amended Joint Chapter 11 Plan of Reorganization, dated October 3, 2011 (R37), and from the Bankruptcy Court's rulings from the bench on June 12, 2012 regarding Lyondell's Motion for Judgment on the Pleadings Regarding the First Amended Complaint by C.A. Baldwin and Ann L. Baldwin (R48), both of which were made final in the Bankruptcy Court's *Final Judgment on the Claims and Administrative Expense Requests and First Amended Complaint of C.A. Baldwin and Ann L. Baldwin*, dated May 15, 2013 (the "Order").  R52.  This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1).

## II.

## STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

A.     STATEMENT OF THE ISSUES

1.     Whether the Bankruptcy Court erred in determining that it had the ability to review the merits of Claim 280692 filed by the Baldwins claiming an unsubstantiated administrative expense of $1,325,000?

2.      Whether the Bankruptcy Court erred in determining that the Baldwins are not entitled to payment as an administrative expense for amounts coming due under a rejected contract after the Baldwins ceased providing a benefit to the Lyondell bankruptcy estate?

3.      Whether the Bankruptcy Court erred in disallowing the Baldwins' claims for interest on the amounts asserted by the Baldwins to be due to them?

4.      Whether the Bankruptcy Court erred in applying the pleading requirements under Rule 8 of the Federal Rules of Civil Procedure, as interpreted by the Supreme Court in *Twombly* and *Iqbal*, to the complaint that the Bankruptcy Court ordered the Baldwins to file pursuant to Rules 9014, 7008 and 7012 of the Federal Rules of Bankruptcy Procedure?

**B.      STANDARD OF REVIEW**

The Bankruptcy Court's factual determinations are reviewed for clear error and its legal conclusions are reviewed *de novo*.  *In re Calpine Corp.*, 356 B.R. 585, 593 (S.D.N.Y. 2007).

### III.

### STATEMENT OF THE CASE

This appeal is the Baldwins' continued effort to play, in the words of Bankruptcy Judge Gerber, "a game of gotcha to secure payment on [an] astronomical claim without judicial scrutiny."  R36, 74:5-6.  It is time for the game to end, and for the Baldwins to be sent home with the only things to which they are legally entitled: an administrative expense of $46,874.97,[1] and an allowed general unsecured claim against the Lyondell bankruptcy estate of $131,157.08.

---

[1]      Lyondell has already paid the allowed administrative expense, in accordance with the Order (R52).  On May 20, 2013, Lyondell sent the Baldwins a check in the amount of the allowed administrative expense.  Due to an internal error at Lyondell, the account on which the check was drawn had been closed, and the check was returned unpaid when the Baldwins deposited it.  On June 25, 2013, Lyondell wired the Baldwins the amount of the allowed administrative expense, plus the fees the Baldwins incurred as a result of the returned check and interest on the amount of the allowed administrative expense at the federal post-judgment interest rate.

Nearly 20 years ago, in December 1994, the Baldwins and Lyondell's predecessor-in-interest signed a Settlement Agreement under which the Baldwins were to receive $5,208.33 per month through February 1, 2012.  Lyondell filed for bankruptcy in January 2009 and stopped making the monthly payments.  The Baldwins chose this moment in time to make their first and only demand from Lyondell for a copy of a letter, described in the Settlement Agreement, verifying Mr. Baldwin's prior employment and salary.  Lyondell did not provide this letter until November 2009.  Since then, the Baldwins have been seeking damages in excess of $1.2 million for the losses they allegedly suffered by not having this letter for a nine-month period.

The Baldwins seek to recover this amount in whole dollars from the Lyondell bankruptcy estate, not as a general unsecured claim but as an administrative expense.  And they seek (and have sought) to do so by denying the Bankruptcy Court the opportunity to review the merits of their claims.

The Baldwins first argue that, because they filed Claim 280692 as an administrative expense and Lyondell did not file a document that was captioned as an objection to Claim 280692 by December 27, 2010, they were entitled to the payment in full of their claim, without the Bankruptcy Court reviewing the merits of the asserted claim.  This argument not only ignores volumes of case law (which the Baldwins never address in their brief) recognizing the Bankruptcy Court's right to review administrative expense requests whether or not an objection to the expense was filed; it also disregards Lyondell's ongoing and repeated opposition to the Baldwins' claimed entitlement to such an administrative expense – objections which were filed on the docket and made on the record at oral arguments before December 27, 2010.

The Baldwins also contend they are entitled to payment as an administrative expense for keeping the Settlement Agreement confidential, even after they ceased keeping it confidential by

3

filing it on the publicly-accessible docket in Lyondell's chapter 11 case.  Simply put, the Baldwins cannot have an administrative expense claim for providing a benefit that they had ceased to provide.  They further assert that, because Lyondell agreed to a discount rate of 7.458% to calculate the present value of the stream of monthly payments due to the Baldwins as of Lyondell's petition date (R49), they are entitled to that same rate of interest on amounts that they allege were due to them as of February 1, 2011.  This contention fails, because the express provisions of the Plan provide that claims will be paid without interest after they are allowed by final order, and the amount of the Baldwins' claims was only determined in May of this year. (Indeed, by virtue of this appeal by the Baldwins, their claims still have not been allowed by a final order.)

The Baldwins lastly argue that the Bankruptcy Court erred when, after ordering the Baldwins to set forth their claims in the form of a complaint subject to federal pleading standards, it applied those very pleading standards, as articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*") and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("*Iqbal*"), to find that the certain aspects of the complaint lacked sufficient factual allegations from which a claim for relief could plausibly be inferred.  The Baldwins' less-than-clear allegations, entirely devoid of supporting authority, that they were not required to plead their claims in response to the Bankruptcy Court's order with the specificity required by *Twombly* and *Iqbal*, are simply another effort to avoid judicial scrutiny of the merits of their claims and to obtain payment of an asserted $1.2 million claim based on unsubstantiated, conclusory allegations and an unsupported damages calculation.[2]

---

[2]  Indeed, although the Baldwins claim to be appearing *pro se*, Mr. Baldwin is an attorney.  Consequently, his willful and continued disregard for precedent and legal authority is hard to understand.

The Bankruptcy Court correctly held that the Baldwins' claims were subject to review and scrutiny, that the Baldwins were required to meet basic pleading standards in articulating their claims, and that the Baldwins failed to plead sufficiently to survive a motion for judgment on the pleadings.  Accordingly, for the reasons more fully developed below, the Bankruptcy Court's Order should be affirmed.

## IV.

### STATEMENT OF THE FACTS

**A.     The Settlement Agreement and the Lyondell Bankruptcy**

On December 23, 1994, Lyondell (then known as Lyondell Petrochemical Company) and the Baldwins entered into the *Settlement Agreement, Full and Final Release and Covenant Not to Sue* (the "Settlement Agreement").  R6 Exhibit A.[3]  Pursuant to the Settlement Agreement, Lyondell agreed, in relevant part, to make equal monthly payments to the Baldwins of $5,208.33 beginning on March 1, 1995 and ending on February 12, 2012.  The Baldwins were obligated to keep the terms of the Settlement Agreement confidential.  In addition, the Settlement Agreement provided that the Baldwins could use as they saw fit a letter, in the form attached to the Settlement Agreement, confirming Mr. Baldwin's position as an Associate General Counsel at Lyondell, the tenure of his employment, and his salary (the "Letter of Reference").[4]  It is unclear from Lyondell's available records whether Lyondell executed the Letter of Reference and provided it to the Baldwins when the Settlement Agreement was executed in 1994.  During the course of this dispute, Lyondell has repeatedly observed in pleadings and oral argument that the

---

[3]   As discussed on page 8 below, the Settlement Agreement, originally filed by the Baldwins as Exhibit A to R6, was removed from the Bankruptcy Court docket and filed under seal.  Out of concern that this Court will not have easy access to the Settlement Agreement, Lyondell has separately transmitted to the Court the full Settlement Agreement, contemporaneously with the filing of this brief.

[4]   As Judge Gerber found, calling the letter a "Letter of Reference" was a misnomer, for it "confirmed Mr. Baldwin's past employment, his title and his responsibilities, but fell far short of the recommendation or endorsement of his future employment."  R51, 8:6-13.

Baldwins have not confirmed nor denied their receipt of the Letter of Reference in 1994 (*see e.g.* R48, 28:1-5); the Baldwins have not responded to this issue.

Lyondell made all of the monthly payments required under the Settlement Agreement through December 2008. Upon the commencement of the chapter 11 cases of Lyondell and its affiliates on January 6, 2009 (the "Petition Date"), Lyondell ceased making payments to the Baldwins in accordance with the general prohibition on debtors paying their prepetition obligations outside of a plan of reorganization absent court approval.

On February 1, 2009, more than fourteen years after the Settlement Agreement's execution, the Baldwins made their first and only request for a copy of the Letter of Reference to Lyondell. R42 ¶10. They did so by mail, sending their demand to two post office boxes, one in The Netherlands and one in Houston, Texas. Lyondell provided the Baldwins with a signed copy of the Letter of Reference, updated to reflect the current name of Lyondell and signed by a current employee, on November 30, 2009, following a status conference before the Bankruptcy Court.

On June 12, 2009, the Baldwins filed proof of claim number 2792 against Lyondell, asserting a general unsecured claim in the total amount of $252,918.74. R4. The Baldwins calculated this claim as the sum of (i) the remaining thirty-seven payments due under the Agreement, for the period of January 2009 through February 2012 (which amount totals $192,708.21), plus (ii) interest accruing on allegedly late payments and an asserted loss of certain tax benefits. As will be discussed further on page 10 below, on June 16, 2010, the Baldwins filed proof of claim 280692 ("Claim 280692"), seeking an administrative expense claim in the amount of "at least $1,325,000" for benefits the Baldwins allegedly provided to Lyondell between the Petition Date and the effective date of the Plan, and for "[d]amages

6

suffered by the Baldwins resulting from the refusal by Lyondell to provide" the Letter of Reference when they demanded it in February 2009.  R23 at 2, point 2.  The Baldwins calculated the former component, for "benefits," as an amount equal to either (a) the remaining payments due under the Settlement Agreement or (b) "the amount paid by Lyondell to attorneys and internal staff in order to avoid admission that all obligations by the Baldwins ceased as of Petition Date, plus 25%."  R23 at 2, point 1b.  The Baldwins calculated the latter component, for damages related to the Letter of Reference, as the remaining payments due under the Settlement Agreement, plus the larger of either (a) "the difference in earning potential over the next fifteen years in the amount of $1,246,875" or (b) "the difference in earning potential over the next fifteen years in the amount of the difference between $101,828 and the average income of attorneys at the Associate General Counsel level at Lyondell prior to and after the Petition Date and at other similar companies which are not in bankruptcy." *Id*. at 2, point 2.

The Baldwins filed two additional proofs of claim in 2011, after Lyondell rejected the Settlement Agreement pursuant to section 365 of the Bankruptcy Code.  Claim number 280995 asserted an administrative expense for $52,083.30 for the same unspecified benefits the Baldwins articulated Claim 280692, but this time from the Effective Date to the Rejection Notice date (each as defined below).  R30.  Claim number 280996 asserted a general unsecured claim in the amount of $1,246,875, representing the same damages the Baldwins articulated in Claim 280692 for Lyondell's delay in providing the Letter of Reference.  R31.  These claims are discussed in further detail on pages 10-11 below.

**B.     The 2009 Baldwin Adversary**

On October 1, 2009, the Baldwins commenced an adversary proceeding (the "2009 Baldwin Adversary") by filing a complaint ("2009 Complaint") against Lyondell seeking a declaratory judgment that Lyondell had breached the Settlement Agreement and that the debts

7

owed to the Baldwins under the Settlement Agreement were excepted from discharge pursuant to 11 U.S.C. § 523(a)(6), a section of the Bankruptcy Code that is clearly inapplicable to Lyondell as a corporate debtor.[5]  R6.  As an exhibit to this publicly-accessible 2009 Complaint, the Baldwins attached a complete and unredacted copy of the Settlement Agreement, thus breaching their contractual obligation to keep the Settlement Agreement confidential.  R6 Exhibit A § 9.

On October 22, 2009, the Baldwins filed an amended complaint ("2009 Amended Complaint"), which again included an unredacted copy of the Settlement Agreement in violation of the Baldwins' confidentiality obligation.  R7.  The 2009 Amended Complaint sought a determination that Lyondell had assumed the Settlement Agreement by its conduct, a declaratory judgment that Lyondell had breached the Settlement Agreement, and an award for damages arising from this alleged breach.[6]

On November 2, 2009, Lyondell filed a motion to dismiss the 2009 Amended Complaint (the "Motion to Dismiss") arguing, *inter alia*, that Lyondell had not breached the Settlement Agreement because Lyondell could not be compelled to perform under the Settlement Agreement prior to its assumption.  R9.  On November 11, 2009, the Baldwins filed their objection to the Motion to Dismiss (the "Dismissal Objection"), in which the Baldwins continued to press their argument that Lyondell had implicitly assumed, and was in breach of, the Settlement Agreement.  R10.  On November 12, 2009, at a status conference before the Bankruptcy Court, Mr. Baldwin stated that the Baldwins' claim for an administrative expense was contingent on the Bankruptcy Court's determination that Lyondell had assumed the Settlement Agreement.  R11 at 15:7-20.

---

[5]    Section 523(a) of the Bankruptcy Code sets forth certain debts that are not discharged in a bankruptcy case of "an individual debtor."

[6]    On October 27, 2009, on the motion of Lyondell, the Court issued an order authorizing the Baldwins to file the Settlement Agreement under seal as an exhibit to both the Complaint and Amended Complaint, and the Settlement Agreement was removed from the public docket.  R8.

Lyondell filed its response to the Dismissal Objection on February 26, 2010.  R13.

**C.     The Baldwins' Assumption Motion, the Plan, and Claim 280692**

On March 8, 2010, the Baldwins filed a motion seeking the Court's approval of

Lyondell's purported assumption of the Settlement Agreement pursuant to sections 363(c)(1) and

365(b) of the Bankruptcy Code (the "<u>Assumption Motion</u>").  R14.

On April 23, 2010, the Bankruptcy Court entered an order (the "<u>Confirmation Order</u>")

confirming the Debtors' plan of reorganization (the "<u>Plan</u>") in the chapter 11 cases of Lyondell

and its affiliates, which became effective by its terms on April 30, 2010 ("<u>Effective Date</u>").  R16,

R15.  The Plan defines an Administrative Expense as, in relevant part,

> any right to payment constituting a cost or expense of administration of any of the
> Chapter 11 Cases under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including,
> without limitation, any actual and necessary costs and expenses of preserving the estates
> of the Debtors, … [or] any indebtedness or obligations incurred or assumed by the
> Debtors…

R15 § 1.1.  The Plan also provided that administrative expense requests were to be filed before

June 30, 2010 (the "<u>Administrative Expense Bar Date</u>"), and that Lyondell "shall have the right

to object to any Administrative Expense within 180 days after the Administrative Expense Bar

Date, subject to extensions from time to time by the Bankruptcy Court" (the "<u>Objection Period</u>").

R15, Art II, Section 2.1(a).  The deadline for objections was thus December 27, 2010 (the

"<u>Objection Deadline</u>"). The Plan further provided that if an Administrative Expense was not

objected to, it would be deemed allowed.  R15, p. 28.

Lyondell filed an objection to the Baldwins' Assumption Motion on May 28, 2010 (the

"<u>Assumption Objection</u>").  In the Assumption Objection, Lyondell argued that the Settlement

Agreement was not an executory contract, and that Lyondell had not assumed the Settlement

Agreement by its conduct.  R22.  Lyondell further argued that the Baldwins were not entitled to

an administrative priority claim for amounts arising under the Settlement Agreement under any

9

theory, and that the Baldwins were entitled at most only to an unsecured claim for any unpaid monthly payments arising under the Settlement Agreement. *Id*., ¶ 4 n.5.

On June 16, 2010, the Baldwins filed Claim 280692, seeking payment of an alleged administrative expense claim in the amount of "at least $1,325,000." R23.  In Claim 280692, the Baldwins specifically identified the Settlement Agreement as the basis for the alleged administrative expense.  As described on page 6 above, included in Claim 280692 was the request for payment of over $1.2 million for damages for Lyondell's alleged breach of the Settlement Agreement by not providing the Letter of Reference when the Baldwins demanded it.[7]  The remaining portion of the claim was for an unspecified "benefit" the Baldwins provided to Lyondell through the Effective Date.

On June 28, 2010, the Baldwins filed their reply (the "<u>Assumption Reply</u>") to the Assumption Objection, repeating their argument that Lyondell had assumed the Settlement Agreement, and contending that they were entitled to an administrative expense claim for their alleged damages and the benefits they allegedly conferred on Lyondell.  R24.  The Administrative Expense Bar Date was June 30, 2010, two days after the Baldwins filed their Assumption Reply.

On November 23, 2010, the Bankruptcy Court heard oral arguments on the Motion to Dismiss and the Assumption Motion.  At the hearing, the Court granted Lyondell's Motion to Dismiss and denied the Baldwins' Assumption Motion, ruling that the Settlement Agreement was an executory contract that Lyondell had neither assumed nor rejected but would now be given the opportunity to assume or reject.  R25.  The Court further ruled that if Lyondell chose to

---

[7]    The exact amount is for the larger of: (a) "the difference in earning potential over the next fifteen years in the amount of $1,246,875" or (b) "the difference in earning potential over the next fifteen years in the amount of the difference between $101,828 and the average income of attorneys at the Associate General Counsel level at Lyondell prior to and after the Petition Date and other similar companies which are not in bankruptcy." R23 at 2, point 2.

reject the Settlement Agreement, the Baldwins would have 30 days to file a claim for damages as a result of the rejection. R25 at 32-34.  Judge Gerber directed Lyondell to settle an order, and, after unsuccessful negotiations, the parties submitted competing forms of orders.

On February 1, 2011, the Court entered an order (the "Agreement Order") regarding its determination at the November 23, 2010 hearing that the Settlement Agreement was an executory contract that had not been assumed or rejected by Lyondell.  R26.  The Agreement Order provided Lyondell with 30 days to assume or reject the Settlement Agreement.  On February 8, 2011, Lyondell filed a notice (the "Rejection Notice") stating that it rejected the Settlement Agreement.  R27.

On February 9, 2011, Lyondell filed the Reorganized Debtors' Tier I Objection to Proofs of Claim Numbers 2792 and 280692 (the "Claim Objection"), seeking to disallow and expunge Claim 2792 (or alternatively to reduce and allow Claim 2792 as general unsecured claim in an amount not to exceed $38,592.32),[8] and to disallow and expunge Claim 280692 on the basis that the Baldwins are not entitled to an administrative expense as a matter of law.  R29.

As discussed above, the Baldwins subsequently filed two proofs of claim in response to Lyondell's rejection of the Settlement Agreement.  On February 14, 2011, the Baldwins filed proof of claim number 280995, asserting an administrative expense in the amount of $52,083.30 for the unspecified benefits the Baldwins provided to Lyondell from the Effective Date to the Rejection Notice date, which amount equals the ten Settlement Agreement payments that came due during that period.  R30.  As with Claim 280692, the Baldwins identified the Settlement

---

[8] This alternative figure is calculated by discounting to present value as of the Petition Date the payments due to the Baldwins under the Settlement Agreement from the Petition Date until their breach of their confidentiality obligations under the Settlement Agreement, which breach Lyondell contended relieved Lyondell of any obligation for the remaining payments. See R29 ¶ 31.  The Bankruptcy Court ultimately ruled that the Baldwins were entitled to a general unsecured claim for the monthly payments arising after they filed the Settlement Agreement publicly on October 1, 2009, and an administrative expense for the monthly payments until that point.

Agreement as the basis for this alleged administrative expense. *Id*. at 2.  On February 28, 2011, the Baldwins filed proof of claim number 280996 asserting a general unsecured claim in the amount of $1,246,875 that allegedly represents the damages the Baldwins incurred as a result of Lyondell's failure to provide the Letter of Reference in February 2009.  R31.  The Baldwins calculate these damages as the greater of either (a) "the difference in earning potential over the next fifteen years in the amount of $1,246,875" or (b) "the difference in earning potential over the next fifteen years in the amount of the difference between $101,828 and the average income of attorneys at the Associate General Counsel level at Lyondell prior to and after the Petition Date and other similar companies which are not in bankruptcy." *Id*. at 2, point 2. Aside from the exclusion of the monthly payments owed under the Settlement Agreement, the damages formula in Claim 280996 is identical to the damages formula in Claim 280692.

**D.      The Baldwins' Motion to Enforce and Attempted Interlocutory Appeal**

After the parties engaged in an unsuccessful attempt to mediate their dispute, on July 11, 2011, the Baldwins filed their Motion to Enforce the Confirmation Order and the Third Amended Joint Chapter 11 Plan of Reorganization (the "Motion to Enforce"), in which the Baldwins sought a determination that, pursuant to the Plan, Claim 280692 had been deemed allowed as an administrative expense.  R32.  The Baldwins alleged, as they do here, that their $1.325 million claim was no longer subject to judicial scrutiny because Lyondell had not filed a formal objection to Claim 280692 within 180 days of the Administrative Expense Bar Date.

Lyondell filed an objection to the Motion to Enforce on August 9, 2011, arguing that it had, in fact, objected to the administrative claims alleged by the Baldwins in Claim 280692, in its many pleadings and oral arguments contesting the Baldwins' allegations that Lyondell had assumed the Settlement Agreement and that the Baldwins were entitled to payment as an administrative expense for damages arising out of that agreement.  R33.  Lyondell also argued

12

that, even in the absence of an objection by Lyondell, the Bankruptcy Court has the authority to review administrative expense claims as a matter of law before they are allowed, and that Claim 280692 did not demonstrate any entitlement to an administrative expense priority. *Id.* The Baldwins replied on August 24, 2011 (R34), and Lyondell sur-replied on September 12, 2011 (R35).

On September 23, 2011, after oral argument, the Court delivered an oral ruling denying the Motion to Enforce on the grounds that (i) Lyondell had objected to the Baldwins' asserted entitlement to an administrative expense arising from the Settlement Agreement three times prior to the Objection Deadline, and (ii) a claim for an administrative expense is not entitled to a presumption of validity and, even in the absence of any objection, the Bankruptcy Court has the power to review any administrative expense request. See R36, 83:2 – 89:12. Regarding the first portion of its holding, the Bankruptcy Court found that based upon the Baldwins' statements and pleadings filed during the course of their dispute with Lyondell, the Baldwins' asserted right to an administrative expense was predicated on their position that Lyondell had assumed the Settlement Agreement. The Bankruptcy Court further concluded that because Lyondell had not assumed – and indeed had later rejected – the Settlement Agreement, most if not all of the Baldwins' claims would be prepetition claims, and an earlier and additional objection by Lyondell to administrative expense treatment of the Baldwins' claims would have shed no new light on this issue. Regarding the second part of its holding, the Bankruptcy Court concluded that neither the terms of the Plan, nor the passage of time, could serve to deprive the Bankruptcy Court of the power to review the Baldwins' asserted administrative expense claim, even if Lyondell had never objected to it. On October 3, 2011, the Court entered its *Order Denying*

13

*Motion to Enforce the Confirmation Order and Third Amended Joint Chapter 11 Plan of Reorganization.*  R37.

On October 6, 2011, the Baldwins filed a motion for leave to appeal, arguing, *inter alia*, that the District Court should hear an interlocutory appeal of the Bankruptcy Court's order denying their Motion to Enforce.  CD R2.  Lyondell filed its opposition on October 20, 2011 (CD R3), and the Baldwins replied on October 28, 2011 (CD R4).  On January 20, 2012, District Judge J. Paul Oetken entered an order denying the motion for leave to appeal, finding that "there is no substantial ground for difference of opinion on the issues raised by the appeal they seek to bring" and that the Baldwins otherwise did not meet the standards for appeal of a final, collateral, or interlocutory order.  CD R9 at 8, 12.

On January 3, 2012, the Baldwins filed a motion to withdraw the reference, seeking to have the contested matter regarding their asserted administrative expense heard by the District Court.  CD R6.  Before Lyondell could file its opposition, District Court Judge Andrew L. Carter entered an order on January 17, 2012, denying the Baldwins' motion to withdraw the reference. CD R8.

On January 5, 2011, the Baldwins filed a motion in the Bankruptcy Court to disallow and expunge their own proofs of claim in the Lyondell bankruptcy case, in what they acknowledged was an effort to obtain a final judgment from the Bankruptcy Court on the claims and to "remove all uncertainty concerning the ability of the Baldwins to appeal the issue at this stage of the proceedings."  CD R7, at 3.  Lyondell opposed this attempt to manufacture appellate jurisdiction on January 30, 2012 (CD R10), and the Baldwins replied on February 23, 2012 (CD R11).  At a hearing before Judge Gerber on April 24, 2012, the Baldwins agreed to withdraw their motion to expunge and disallow their own claims.

14

**E.    The Order to File a Complaint & the 2012 Baldwin Adversary**

On October 31, 2011, the Bankruptcy Court conducted a status conference with Mr.

Baldwin and representatives of Lyondell to determine the procedures for adjudicating the

Baldwins' claims.  After hearing each party's position, the Bankruptcy Court ordered the

Baldwins to articulate their claims in the form of a complaint in accordance with Bankruptcy

Rule 7008 (and Bankruptcy Rule 7009, if applicable), and ordered Lyondell to answer or

otherwise respond to that complaint in accordance with Bankruptcy Rule 7012.  See R38 at 7:4-

15, 8:24-9:8.  Judge Gerber specifically ordered the Baldwins to "lay out [their] remaining

claims *and the basis for them*" so that he could "get [his] arms around what the legal theory is

under which Mr. Baldwin is proceeding, [and] what facts underlie his contentions." *Id*. at 7:13-

14, 8:2-8 (emphasis added).  On December 14, 2011, the Bankruptcy Court entered an order

memorializing the rulings made at the status conference.  R39.

On January 5, 2012, the Bankruptcy Court docketed the Baldwins' *Complaint With

Respect to Proof of Claim Numbers 2702 and 280996, and Administrative Expense Request

Numbers 280963 and 280995*, commencing the Baldwins' second adversary proceeding ("2012

Baldwin Adversary").[9]  R40.  Lyondell answered and moved for judgment on the pleadings,

contesting, among other things, the sufficiency of the Baldwins' factual allegations regarding

their claim for damages for Lyondell's nine-month delay in providing the Letter of Reference

under the pleading standards imposed by *Iqbal*.  CD R12, 13 at, *e.g.*, ¶¶46, 54-57.  The Baldwins

subsequently requested Lyondell's acquiescence to their filing of an amended complaint, which

Lyondell provided, and the Baldwins filed an amended complaint on March 12, 2012 ("2012

Amended Complaint").  R42.

---

[9]    Lyondell assumes that the Baldwins intend to reference proof of claim 2792 and Claim 280692 in the titles of
this complaint and the amended complaint, and not 2702 and 280692.

15

The 2012 Amended Complaint asserted a general unsecured claim for $1,504,166.66 comprised of: (a) the unpaid monthly payments arising under the Settlement Agreement, totaling $197,916.66; (b) $59,375 as compensation for the "altered tax consequences" of those payments; and (c) $1,246,875 for the "reasonably foreseeable consequential damages caused to the Baldwins by the failure to have the letter of reference." *Id.* at 7-8.  The 2012 Amended Complaint also asserted an administrative expense claim for: (x) 26 the monthly payments arising under the Settlement Agreement from the Petition Date until the Rejection Date, amounting to $130,208.30; (y) interest of "approximately $10,000," and taxes of 30% on the 26 monthly payments, or $42,062.49; and (z) the same $1,246,875 for damages relating to the Letter of Reference.  *Id.* at 8-10.  The 2012 Amended Complaint asserted that any amounts allowed as an administrative expense would be offset against the asserted general unsecured claim.  *Id.* at 10.

On March 23, 2012, Lyondell filed its Answer and Affirmative Defenses to the 2012 Amended Complaint and its *Motion for Judgment on the Pleadings Regarding the First Amended Complaint by C.A. Baldwin and Ann L. Baldwin* (the "MJP").  R43, 44.  In the MJP, Lyondell repeated the contentions that it had made in response to the first complaint that (a) the Baldwins had failed to allege a basis for damages from Lyondell's failure to provide the Letter of Reference sufficient to meet the pleading requirements under *Iqbal* and *Twombly*; (b) the Baldwins were not entitled to a claim for tax liabilities or interest on the monthly payments under the Settlement Agreement based on the terms of the Settlement Agreement itself; and (c) the Baldwins were not entitled to an administrative expense for monthly payments arising under the

Settlement Agreement after October 1, 2009.  R44, 18-26.[10] The Baldwins opposed the MJP on

April 2, 2012, asserting that the 2012 Amended Complaint was not subject to the pleading

standard articulated in *Iqbal* because "[c]laims in bankruptcy in general, and in this case in

particular, have been subject to a greatly reduced notice standard."  R46 at 3.  The Baldwins

further contended, without identifying any additional factual support for their claims, that they

had established a *prima facie* case for their claims and were entitled to discovery from Lyondell.

*Id*. at 5.  Lyondell replied in support of the MJP on April 19, 2012.  R47.

On June 12, 2012, at a hearing in the Bankruptcy Court, Judge Gerber granted Lyondell's

MJP in part, and dismissed the Baldwins' claims in all respects except for their general

unsecured claim for the present value as of the Petition Date of the monthly payments owed

under the Settlement Agreement arising after October 1, 2009, and their administrative expense

claim for the value to Lyondell of the confidentiality of the Settlement Agreement between the

Petition Date and October 1, 2009, when "the Baldwins ceased to provide that benefit" of

confidentiality.  R48, 61:24-25.

The parties subsequently negotiated and filed with the Bankruptcy Court a *Stipulated

Statement of Facts and Joint Statement of Remaining Legal Issues* on August 9, 2012.  In this

stipulation, the parties agreed to various facts that would be necessary for determining the

amount of the Baldwins' claims, and agreed that there remained only two issues left for the

Bankruptcy Court to decide: (1) whether the Baldwins' compliance with the terms of the

Settlement Agreement from the Petition Date until October 1, 2009 constituted a service entitling

the Baldwins to an administrative expense under section 503(b)(1)(A) of the Bankruptcy Code,

---

[10]   Lyondell also argued in the MJP that the Baldwins' act (or lack of action) of keeping the Settlement Agreement
confidential could not give rise to an administrative expense, and that by publicly disclosing the Settlement
Agreement the Baldwins had forfeited any claim to any unpaid amounts under the Settlement Agreement.  The
Bankruptcy Court ruled against Lyondell on both these issues in the Order (as defined below), and Lyondell has
not appealed these rulings.

and (2) whether the Baldwins' filing of the Settlement Agreement on the Bankruptcy Court's docket constituted a breach of the Settlement Agreement which voided Lyondell's obligation to make the monthly payments thereunder.  R49.  On May 8, 2013, Judge Gerber issued his final determination on these issues, answering the first issue in the affirmative and the second in the negative.  R51.  On that basis, the Bankruptcy Court awarded the Baldwins (a) an administrative expense of $46,874.97 for the nine post-petition months during which the Baldwins maintained the confidentiality of the Settlement Agreement, consisting of the monthly payments owed under the Settlement Agreement; and (b) a general unsecured claim of $131,157.08, representing the present value as of the Petition Date of the twenty-nine periodic payments that would have been made under the Settlement Agreement from and after October 1, 2009, if Lyondell had not rejected the Settlement Agreement.  R51.  The Order based on the Bankruptcy Court's oral ruling was entered on May 15, 2013.  R52.

## V.

## <u>ARGUMENT</u>

### A.   THE BALDWINS' ADMINISTRATIVE EXPENSE REQUEST WAS SUBJECT TO BANKRUPTCY COURT REVIEW

The Baldwins argue that because they filed Claim 280692 on an administrative expense form, and because Lyondell did not file a document that was labeled an objection to Claim 280692  prior to the Objection Deadline, Claim 280692 is deemed allowed as an administrative expense and is immune from any review or scrutiny.  Baldwin Brief at 9-14.  As discussed further below, the Bankruptcy Court ruled that this argument fails on two independently sufficient grounds.  The Baldwins, however, have only appealed one of these reasons, and on that basis alone their appeal must be denied.

The first independently sufficient ground is that, as the Bankruptcy Court found, Lyondell did object to the Baldwins' asserted right to an administrative expense claim prior to the Objection Deadline.  Both before and throughout the period in which the Baldwins assert Lyondell should have objected to Claim 280692, Lyondell maintained the position, on the record, that the Baldwins were not entitled to an administrative expense, and those objections satisfy any conceivable requirements for what constitutes an objection to an administrative expense. The Baldwins have appealed the Bankruptcy Court's ruling solely on this basis, and their appellate arguments are addressed further below.

The second independently sufficient basis for the Bankruptcy Court's ruling is that, even if Lyondell's pleadings and arguments did not qualify as a sufficient objection to the allowance of Claim 280692, the Bankruptcy Court found it had the inherent authority to review the legitimacy of Claim 280692's asserted status as an administrative expense.  Unlike proofs of claim, administrative expense claims are not *prima facie* valid and are always subject to judicial oversight, even in the absence of an objection.  The case law in support of this point is voluminous,[11] and unchallenged by the Baldwins.  Judge Gerber recognized and strongly stated this alternative basis for his decision.  R36, 85:10-13 ("I categorically reject the notion that I, as a court, must award over a million dollars in administrative expense claims without judicial scrutiny."); *see generally* R36, 85:10 – 89:12.  The Baldwins had no response to this issue during

---

[11]    *See Williams v. IMC Mortgage Co. (In re Williams)*, 246 B.R. 591, 594 (B.A.P. 8th Cir. 1999) ("In contrast to proofs of claim filed under § 502, which are deemed allowed absent objection, an administrative expense claim is allowed only after determination by the court that the expense is allowable."); *In re PT-1 Commc'ns, Inc.*, 386 B.R. 402, 407 (Bankr. E.D.N.Y. 2007) ("[R]equests for administrative expense payment are not given the same evidentiary weight as proofs of claim."); *In re Silvus*, 329 B.R. 193, 205 (Bankr. E.D. Va. 2005) ("'[A] request for administrative expenses, unlike a proof of claim, is not 'deemed allowed' in the absence of an objection and does not constitute *prima facie* evidence of the validity and amount of the request." (quoting *In re Morgan*, 48 B.R. 148, 149 (Bankr. D. Md. 1985))); *In re Philadelphia Mortg. Trust*, 117 B.R. 820, 827 (Bankr. E.D. Pa. 1990) ("Even if no objections to the claimed priority status are raised, the bankruptcy court must determine, in its discretion, the priority of the claim." (citing *Guaranty Nat'l Ins. Co. v. Greater Kansas City Transp., Inc.*, 90 B.R. 461, 462–63 (D. Kan. 1988)).

oral argument.[12]  And they do not have any response here on appeal.  Instead, they have simply ignored this alternative basis for Judge Gerber's decision altogether, not even identifying it as an issue on appeal.

This Court can and should affirm the Bankruptcy Court on the basis of the unappealed alternative and sufficient ground for its decision.  *Bejleri v. Gonzales*, 181 F. App'x 60, 62 (2d Cir. 2006) (dismissing an appeal without considering the merits where appellant failed to appeal one of the separate grounds on which the lower court's decision rested).  Nonetheless, Lyondell will address the various arguments the Baldwins make regarding the Bankruptcy Court's determination that Lyondell had, in fact, objected to the Baldwins' asserted administrative expense.  As demonstrated below, the Baldwins' arguments are without merit.

**1.      Lyondell timely objected to Claim 280692.**

The Baldwins argue that Claim 280692 was deemed allowed and could not be reviewed, because Lyondell did not properly object in accordance with the terms established by the Plan.  They also appear to argue that, in finding that Lyondell had objected to Claim 280692, Judge Gerber somehow "modified" the Plan.  Baldwin Brief at 10 ("The Confirmation Order constituted the approval by the bankruptcy court of all requests for administrative expenses meeting the requirements of the Plan … [T]he Confirmation Order cannot [subsequently] be modified to allow for exceptions at the whim of the Debtor.").  The Baldwins' argument fails for a number of reasons.

*First*, Lyondell plainly and repeatedly objected to the Baldwins' asserted entitlement to an administrative expense for amounts related to the Settlement Agreement, and Claim 280692

---

[12]   Judge Gerber asked Mr. Baldwin during oral argument: "I need help from you in understanding whether you contend that, no matter how obviously deficient an administrative expense claim is, that if the debtor doesn't object, I, as a judge, am bound to allow such a claim to be allowed … such a concept, notion would be news to me; in fact, it would be astounding to me."  R36 at 42:24 – 43:9.  Mr. Baldwin did not address this issue at argument.

clearly identifies the Settlement Agreement as the basis for the alleged administrative expense. The claim, which the Baldwins filed before the Bankruptcy Court's determination that Lyondell would have a period of time to decide whether to assume or reject the Settlement Agreement, is simply another representation of the arguments the Baldwins were already making in the 2009 Baldwin Adversary and the Assumption Motion that they were entitled to an administrative expense – arguments that Lyondell had repeatedly opposed, and which the parties were litigating.  As discussed in more detail below, in both of these actions, the Baldwins claimed that Lyondell had assumed the Settlement Agreement and then breached its terms by failing to provide Mr. Baldwin with the Letter of Reference.  Because this was a breach of an assumed contract, the Baldwins contend they were entitled to payment in full, and not as a general unsecured claim.  R7, ¶¶ 19, 23, 24; R14 ¶¶ 18, 25.  The same argument underpins Claim 280692.

The Baldwins stated on the record at the very beginning of this dispute – and have repeated throughout these proceedings – that the administrative expense status of their claims was contingent on the Bankruptcy Court's determination that Lyondell had assumed the Settlement Agreement. *See* R11, 15:11-19.  Lyondell has clearly and consistently denied that it had assumed the Settlement Agreement, that the Baldwins were entitled to full payment arising out of the Settlement Agreement, and that the Baldwins had provided a beneficial service to Lyondell entitling the Baldwins to an administrative expense.

Indeed, as the following chronology makes clear through the words of the parties to this appeal, the very premise of Claim 280692 – the Baldwins' entitlement to an administrative expense based on Lyondell's assumption of the Settlement Agreement – was being contested by Lyondell before, during and after the time period in which the Baldwins assert Lyondell should

have objected to their claim. Clearly, Lyondell had objected – and continued to object – to the

Baldwins' claims.

- **October 1, 2009**: In the 2009 Adversary, the Baldwins sought "[a] determination by the Court that the Settlement Agreement has been assumed by the Debtor, and a determination by the Court as to the cure, … [and] [a]n award by the Court of damages resulting from the breach of the Settlement Agreement by the Debtor." R7, ¶¶ 23-24; *see also* Dismissal Objection, R10, ¶¶ 5, 16, 20.

- **November 2, 2009**: Lyondell filed its Motion to Dismiss the Baldwins' 2009 Amended Complaint. R9. Lyondell argued in the Motion to Dismiss that the Baldwins are, at most, entitled to a prepetition unsecured claim, and stated that Lyondell disputed any asserted administrative expense claim by the Baldwins. For example, in Lyondell's words:

  o "The payments that are the subject of the Amended Complaint are indisputably prepetition claims because the Settlement Agreement is a prepetition contract." R9, ¶ 17.

  o "[A]ssuming solely for purposes of this Motion that the Settlement Agreement is an executory contract… because a creditor cannot force the debtor to perform under an executory contract prior to assumption, neither Lyondell's failure to make postpetition payments to Plaintiffs nor Lyondell's failure to provide Plaintiffs with a letter of reference constitute a default under the Settlement Agreement." *Id.*, ¶ 20.

- **November 12, 2009**: In a status conference, Mr. Baldwin stated: "[M]y claim is not that there was a breach that was prepetition here, but that … it is an executory contract which has been adopted by behavior of the debtor; and therefore … my claim for the postpetition damages is an administrative claim…" R11, 15:11-19.

- **February 26, 2010**: In Lyondell's response in support of the Motion to Dismiss, it stated: "even if the Plaintiffs were correct that the Debtors are in postpetition breach of the Settlement Agreement … [the Baldwins'] claims are prepetition claims." R13 at 3.

- **March 8, 2010**: The Baldwins filed their Assumption Motion, again seeking the Bankruptcy Court's approval of Lyondell's purported assumption of the Settlement Agreement by its conduct and stating that they are entitled to "the payment by Debtor of the *full amount* due under the Contract … plus damages caused by failure to provide the letter of reference." R14 at 5, 6 (emphasis added).

- **April 23, 2010**: The Plan was confirmed, setting in motion the process and timeline for parties to file requests for payment of administrative expenses and for Lyondell to object to those requests. R20.

- **May 28, 2010**: Lyondell filed its objection to the Assumption Motion, again stating its position: "[The Baldwins] may be asking for an administrative priority claim for some unspecified period of time.  [They] are not entitled to one because they have failed to show an actual, concrete, discernable benefit received by Lyondell. … Moreover, [the Baldwins], who precipitated these events by filing a meritless complaint and publishing confidential information, should not be permitted to profit from their own wrongdoing by obtaining an administrative priority claim."  R22 at 4, n. 5.

- **June 16, 2010**: The Baldwins filed Claim 280692, seeking administrative expense priority for what they sought in the Assumption Motion: the payment in full for the monthly payments owed under the Settlement Agreement and damages for failure to provide a letter of reference.  R23.

- **November 23, 2010**: Oral argument held on both Lyondell's Motion to Dismiss the 2009 Baldwin Adversary and the Baldwins' Assumption Motion.  R25.  Judge Gerber ruled that the Settlement Agreement was an executory contract that has not been assumed or rejected by Lyondell.[13]  During the hearing:

    o  Lyondell restated its position that the Baldwins are not entitled to payment based on the assumption of the Settlement Agreement: "[I]t's the debtors' position that it is not executory, or that if it is executory it was rejected by operation of the plan because the debtors did not affirmatively and expressly assume it on their assumption schedule."  R25, 26:16-19.

    o  When asked by Judge Gerber what his damages were, Mr. Baldwin replied: "The damages are the consequences on my income by not having the letter of reference and not being able to apply for jobs that would have required such a letter of reference," exactly those damages sought in Claim 280692.  R25, 30:12-15.

- **December 27, 2010**: Objection Deadline for Lyondell to object to administrative expenses, as 180 days from the Administrative Expense Bar Date.  The Bankruptcy Court had not yet entered its order from the November 23, 2010, oral argument regarding the purported assumption of the Settlement Agreement and the Baldwins' asserted right to payment as an administrative expense.

- **February 1, 2011**: The Court entered the Agreement Order, formalizing its decision at the hearing on November 23, 2010.  Under the Agreement Order, Lyondell had 30 days in which to assume or reject the Settlement Agreement, and the Baldwins had 30 days from notice of Lyondell's decision to file a claim for damages if Lyondell rejected the Settlement Agreement.  R26.

- **February 8, 2011**: Lyondell rejected the Settlement Agreement.  R27.

---

[13]  The Court directed Lyondell to settle an order.  After unsuccessful negotiations between Lyondell and the Baldwins over the order, both parties submitted forms of order to the Bankruptcy Court.

- **February 9, 2011**:  Lyondell filed its objection to Claim 280692.

Clearly, since October 2009, the Baldwins have been contending that they are entitled to be paid on an administrative expense basis (i.e., in full) for the amounts owed to them by Lyondell.  And just as clearly, since November 2009 – more than a year before the Objection Deadline – Lyondell has been vigorously opposing the Baldwins' position.  The question of whether Lyondell had assumed the Settlement Agreement by its conduct, which the Baldwins identified as early as November 2009 as the key to their argument for why they are entitled to administrative expense treatment (R11, 15:11-19), was awaiting the entry of an order by the Bankruptcy Court at the time that the Baldwins say Lyondell should have filed an additional objection.  No such additional document was needed, as the Bankruptcy Court correctly held.

*Second*, Lyondell's objections to Claim 280692 are entirely in accordance with the Plan. In arguing otherwise, the Baldwins invent several procedural requirements that are not found in the text of Plan or the applicable rules.  They argue that the Plan's provision that administrative expense requests will be allowed unless Lyondell objects to one which is "timely-filed and properly served" precluded any objection before an administrative expense request was filed, and that an objection had to be filed on a particular form with certain express language.  As will be discussed further in the following sections, the plain language of the Plan and the Federal Rules of Bankruptcy Procedure ("FRBP" or the "Rules") simply does not support these arguments. Lyondell clearly communicated its opposition to the administrative expense that the Baldwins sought in Claim 280692 throughout the Objection Period, and Judge Gerber was correct to find that Lyondell sufficiently objected to the Baldwins' claims.

*Third*, the Agreement Order operated to extend the time in which Lyondell could object to Claim 280692, and Lyondell formally objected within this extended period.  R26, R29.  Prior to February 1, 2011, it was simply not clear whether the Baldwins had any valid basis to assert

24

an administrative expense claim, because the issue underpinning the claim – whether Lyondell had assumed the Settlement Agreement – was not yet resolved.  The character or legal basis of Claim 280692 did not exist and was not knowable until the assumption or rejection decision was made by Lyondell, and that decision could not be made until the Bankruptcy Court entered its order regarding the status of the Settlement Agreement.  Recognizing this, the Agreement Order gave Lyondell 30 days to assume or reject the Settlement Agreement, and the Baldwins 30 days to file claims based on Lyondell's assumption or rejection decision.  R26.  In doing so, the Agreement Order effectively "reset the clock" on the claims filing and objections process as it related to the Baldwins' claims, in recognition that Lyondell's assumption or rejection decision would change (or potentially resolve, if Lyondell assumed the Settlement Agreement) the parties' positions.

The Baldwins imply that Lyondell was required to request an extension of time – and the Bankruptcy Court could only grant such an extension – within the Objections Period.  Baldwin Brief at 10.  Nothing in the Plan supports this contention.  The Plan says that the Objection Deadline is "subject to extensions from time to time by the Bankruptcy Court" – permissive language which does not require an extension be sought, or granted, within a certain period.  Judge Gerber contrasted this language with restrictive language in provisions of the Bankruptcy Code regarding extensions, which is not found in the Plan.  R36, 56:6-10 ("[The language]'s rather different than the way that 365(d)(4) of the code is drafted, where the requests must be – where the statute says, in words or substance, subject to extension sought and obtained *within* that 180 days ….") (emphasis added).

*Fourth*, Judge Gerber did not somehow modify the Plan by finding that its provisions did not render Claim 290692 automatically deemed allowed.  A modification "alter[s] the legal

relationships among the debtor and its creditors and other parties in interest." *In re Ionosphere Clubs, Inc*., 208 B.R. 812, 816 (S.D.N.Y. 1997); *see also In re Joint E. & S. Dist. Asbestos Litig*., 982 F.2d 721, 747 (2d Cir. 1992) *opinion modified on reh'g*, 993 F.2d 7 (2d Cir. 1993) (finding a proposed trust restructuring was an impermissible plan modification because it would alter the substantive rights of some creditors, in contrast to another case in which "[n]o substantive right was impaired in any way."). Here, Lyondell expressly had the right to object to administrative expense requests under the Plan. R15, at 28. In determining whether Lyondell had properly exercised that right, Judge Gerber was *interpreting* the Plan, not granting Lyondell a new right nor otherwise altering its obligations to creditors. *In re Johns-Manville Corp*., 920 F.2d 121, 129 (2d Cir. 1990) (finding that, because the plan contemplated the type of action the court ordered and because "[t]he substantive rights of the Claimants remain unchanged," the court's suspension of a claims processing facility did not constitute impermissible plan modification). Nor did the Bankruptcy Court's determination deprive the Baldwins of anything to which they were entitled. Contrary to their contentions, the Plan does not confer upon the Baldwins a right to an administrative expense. They may file a request for allowance of an administrative expense; thereafter, their right to payment on that claim is subject to review, by both Lyondell and the Bankruptcy Court. *See* discussion on pages 18-20 above. By finding that the Baldwins' right to payment of their asserted administrative expense was not made unreviewable by virtue of the Plan, Judge Gerber did not modify the Plan, but rather applied its terms consistently with bankruptcy law. R36 at 88:24-25 ("The plan can't trump the case law."); *see also* 89:2-12.

Further, to the extent the Agreement Order operated to extend the time in which Lyondell had to object to Claim 280692, this did not constitute a modification of the Plan. The extension of this time period was expressly contemplated by the Plan. Under similar circumstances, courts

have found that such an order is procedural and is not a plan modification. *McCrary v. Barnett (In re Sea Island Co.)*, 486 B.R. 559 (S.D. Ga. 2013) (finding that the bankruptcy court's extension of the claims objections deadline and alteration of dates for distributions to creditors whose claims had already been objected to did not constitute modification of the plan).[14]

The case law the Baldwins cite in support of their argument is inapposite. The Baldwins cite *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 207, 108 S. Ct. 963, 969 (1988), for the proposition that a Bankruptcy Court may only exercise its equitable powers within the confines of the Bankruptcy Code and that courts may not confirm reorganization plans without requisite creditor support. Lyondell does not disagree with either of these propositions. This, however, is simply not a case in which the Bankruptcy Court either used its equitable powers contrary to the provisions of the Bankruptcy Code – the Baldwins, for their part, point to no such transgression – or confirmed the Plan without requisite creditor approval. The other case cited by the Baldwins, *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 129 S. Ct. 2195 (2009), stands for the indisputable proposition that a court should enforce orders according to their unambiguous terms. That is, in fact, what Judge Gerber did. The Baldwins simply wish those terms were different.

### 2.   Lyondell's objections were procedurally valid.

The Baldwins argue that Lyondell's objections to their asserted right to an administrative expense were procedurally defective in three ways: (a) they were made prior to the filing of Claim 280692 and were thus premature (Baldwin Brief at 11-12); (b) they did not explicitly address administrative expenses or use the word "objection" (Baldwin Brief at 12-13); and (c)

---

[14]   Lyondell acknowledges that the court in *In re Ampace Corp.*, 279 B.R. 145, 152-53 (Bankr. D. Del. 2002) held that that an extension of the claims objections deadline under the confirmed chapter 11 plan was a "substantive matter" requiring plan modification. However, a key issue for that court was that the plan in that case did not contain any language that would permit extensions of the objections deadline. *Ampace Corp.*, thus, is fundamentally different from and inapplicable to the situation here, where the Plan expressly permits extensions of the deadline in question.

they were not made on an Official Form.  Because of these deficiencies, the Baldwins believe

they are entitled to be paid more than one million dollars from the Lyondell estate, without any

substantive review of the merits of their claims.

The Baldwins' zealous embrace of alleged procedural formalities is misplaced.  The

terms of the very Plan the Baldwins understand to impose these rigorous procedural

requirements on Lyondell simply do not support the Baldwins' interpretation; nor do the Rules.

More fundamentally, Lyondell clearly and unambiguously provided the Baldwins and the

Bankruptcy Court with notice of its substantive objections to the claims the Baldwins assert in

Claim 280692 sufficiently in advance of any court adjudication process and with sufficient

specificity that there was no way to misapprehend Lyondell's position.  Thus, Lyondell complied

with the due process rationale underpinning the claims objections procedures, even to the extent

the Baldwins would have those procedures apply.

The Plan's provisions for objecting to administrative expenses are contained in Section

2.1(a) of the Plan which states, in relevant part:

> The Debtors shall have the right to object to any Administrative Expense within 180 days
> after the Administrative Expense Bar Date, subject to extensions from time to time by the
> Bankruptcy Court.  Unless the Debtors or the Reorganized Debtors object to a timely-
> filed and properly served Administrative Expense, such Administrative Expense shall be
> deemed Allowed in the amount requested.

R15, p. 28.  The Baldwins argue that the second sentence should be interpreted to preclude any

statements made by Lyondell prior to the filing of the Baldwins claims from serving as a valid

objection to their asserted rights to be paid in full – and thus precludes all three objections Judge

Gerber specifically referred to when finding that Lyondell had objected to Claim 280692.

Plans of reorganization, like other contracts, must be interpreted in accordance with their

plain terms.  Unless the Plan is ambiguous, "a Court must adopt the plain and natural meaning

only of the words contained within the text of the instrument itself."  *In re Victory Markets, Inc.*,

221 B.R. 298, 303 (B.A.P. 2d Cir. 1998) ("As with any contract, the starting point for review of a

plan is its plain language.  Unless some ambiguity is to be found within the plan itself, the Court

has no basis to look beyond its text.").  The plain reading of the Plan's terms here does not

support the preclusion of objections to administrative expense requests made prior to their filing;

rather, the Plan simply establishes a cut-off date by which such objections must be made.[15]

The Baldwins' second procedural complaint is that Lyondell's statements contesting the

Baldwins' entitlement to an administrative expense request were deficient because they were

neither "styled as" objections nor did they refer to an administrative expense, and they were not

made on an Official Form.  Baldwin Brief at 12-13.

As a preliminary matter, it should be noted that Lyondell was not required, by the terms

of the Plan nor by the Rules, to style its objection in any particular way or to use a particular

form.  Although FRBP 9009 does direct that official forms "shall be observed," it also provides

they may be "used with alterations as may be appropriate…. [and] may be combined and their

contents rearranged."  FRBP 9009.[16]  Officials forms do not have the force of law.  *In re*

*Clausen*, 464 B.R. 827, 830 (Bankr. W.D. Wis. 2011) ("there is nothing to suggest that the

Official Forms have the force and effect of the Bankruptcy Code or Rules … [U]nlike the Rules,

the Official Forms do not require approval either by the Supreme Court or by Congress, and

while they should be observed and should be used ... they do not have the force of law.")

(internal citations omitted).

---

[15] As discussed on pages 20-25 above, given the context – that the parties were disputing whether the Settlement Agreement was executory, whether it had been assumed by Lyondell, and whether the Baldwins could even be entitled to payment thereon – the deadline for Lyondell to object to the asserted administrative expense was extended until Lyondell could assume or reject the Settlement Agreement and the Baldwins had the opportunity to file an additional claim, if needed.

[16] The full text of the Rule is: "Except as otherwise provided in Rule 3016(d), the Official Forms prescribed by the Judicial Conference of the United States shall be observed and used with alterations as may be appropriate. Forms may be combined, and their contents rearranged to permit economies in their use. The Director of the Administrative Office of the United States Courts may issue additional forms for use under the Code. The forms shall be construed to be consistent with these rules and the Code."

Further, Form 20B, which the Baldwins claim "prescribes the format and content required by law for a valid objection to [Claim 280692]" (Baldwin Brief at 13), is merely the "Notice of Objection to Claim" form.  This form serves to inform the claimant that there is an objection to its claim, provides the name of the objecting party, and states when the claimant must appear in court for adjudication of the objection.  The form is consistent with the requirements of Rule 3007(a) that objections must be in writing, filed, and delivered to the claimant 30 days before an adjudication hearing.[17]  The Baldwins cannot – and, tellingly, they do not – argue that they did not know that Lyondell contested their asserted entitlement to an administrative expense, nor that they were unaware of any hearings on the merits of their claim.[18]  From the numerous pleadings and oral arguments on these issues, the Baldwins were fully apprised of all information that would have been conveyed by the Official Form that the Baldwins complain Lyondell failed to use.

More importantly, these procedural arguments miss the point.  The procedural requirements for claims objections are designed to ensure that claimants obtain proper notice of an objection and the opportunity to defend their claims.  *In re Durham*, 260 B.R. 383, 390-91 (Bankr. D.S.C. 2001) (considering whether a reorganization plan, in which a creditor's claim is treated differently than in the creditor's proof of claim, may act as an objection to the proof of claim, the court finds that "the most important issue to consider is the adequacy of the notice…. no additional or separate objection to the proof of claim is necessary or practical if the creditor has sufficient notice that the Plan proposes to treat its claim differently than in the manner in

---

[17]   The full text of Fed. R. Bankr. P. 3007(a) is: "Objections to Claims: An objection to the allowance of a claim shall be in writing and filed. A copy of the objection with notice of the hearing thereon shall be mailed or otherwise delivered to the claimant, the debtor or debtor in possession, and the trustee at least 30 days prior to the hearing."

[18]   They simply claim they were "never put on notice in any filing that [Lyondell] were [*sic*] going to object to an administrative expense."  R36, 46:17-19.

which it was filed.").[19]  Notice and an opportunity to defend are safeguards intended to ensure that due process is met, *not* tricks and traps designed to add unnecessary procedural obligations to the bankruptcy process.  Tellingly, the Baldwins have not denied that they had notice that Lyondell objected to their claim or that they were deprived of the opportunity to defend their position.  In these circumstances, where the claimants had clear notice of the debtor's opposition to their claim and ample opportunity to present their case, their complaint that the debtor failed to meet the "procedural" elements of an objection is just wrong.

This point is amply demonstrated by distinguishing the case law cited by the Baldwins in support of their argument that Lyondell's objection was procedurally defective.  In *In re Mack*, 132 B.R. 484 (Bankr. M.D. Fla. 1991), the debtor had filed its bankruptcy petition and schedules on "homemade" forms that aggregated and modified the Official Forms.  Finding that the information provided on the forms was "substantially less than the information called for by the official forms," that the forms were illegible in places, and that the manner in which they were filled out did not comply with the operative local rules, the Bankruptcy Court struck the forms and ordered the debtors to file amended versions.  *Id*. at 485.  In ordering a new section 341 meeting after the amended petition and schedules were filed, the *Mack* Court noted that the information provided in the original filings was insufficient to allow "the trustee [to] perform his or her duties at the [section 341] meeting, and … creditors [to] participate meaningfully at the meeting."  *Id*. at 485-86.[20]

---

[19]   *See also Matter of Pence*, 905 F.2d 1107, 1109 (7th Cir. 1990) ("Due process does not always require formal, written notice of court proceedings; informal actual notice will suffice.")

[20]   The Baldwins also cite "cases cited by *In re Clausen*, 464 B.R. 776 (Bankr. W.D. Wisc. 2011)." Baldwin Brief at 13. These cases stand for the proposition, as described in *In re Clausen*, that the "use of the Official Forms is not 'entirely and absolutely mandatory,' [but] is strongly preferred, and substantive deviation from the Official Forms should be rare."  *In re Clausen*, 464 B.R. 776, 831 (Bankr. W.D. Wisc. 2011).  Lyondell's deviation from the Official Form was not substantive, as shown above, as the Baldwins had more than ample notice that their claims were disputed, and the basis for that dispute.

In contrast to the situation in *Mack*, the objections made by Lyondell to the Baldwins' claims of entitlement to an administrative expense deprived the Baldwins of no necessary information, and served the purpose of the claims objection procedure: to give notice of an objection and an opportunity to defend a claim. The Baldwins certainly had such an opportunity. The asserted basis for Claim 280692, the status of the Settlement Agreement, was litigated in the 2009 Baldwin Adversary and through argument of the Assumption Motion, and the claim itself was litigated through the 2012 Baldwin Adversary.

The Baldwins' efforts to elevate an alleged error of form and process to the point of resulting in a substantive loss of rights should not be successful. Rather, the Court should recognize that substance must control over form and process, as in the analogous context of the requirements for filing proofs of claim. The "informal proof of claim" doctrine has been developed to

> alleviate problems with form over substance; that is equitably preventing the potentially devastating effect of the failure of a creditor to formally comply with the requirements of the Code in the filing of a Proof of Claim, when, in fact, pleadings filed by the party asserting the claim during the claims filing period in a bankruptcy case puts all parties on sufficient notice that a claim is asserted by a particular creditor.

*In re M.J. Waterman & Associates, Inc.*, 227 F.3d 604, 609 (6th Cir. 2000). The doctrine is primarily concerned with whether the debtors and other creditors have notice of the elements of the proof of claim. Bankruptcy Courts in this District have applied a four-pronged test to determine whether an informal proof of claim has been filed: "The filing must: (1) have been timely filed with the bankruptcy court and have become part of the judicial record; (2) state the existence and nature of the debt; and (3) state the amount of the claim against the estate, and (4) evidence the creditor's intent to hold the debtor liable for the debt." *In re Dana Corp.*, 2008 WL

2885901, at *4 (Bankr. S.D.N.Y. 2008) (citing *In re Enron Creditors Recovery Corp.*, 370 B.R. 90, 99 (Bankr. S.D.N.Y. 2007)).

The circumstances here fit these criteria exactly, even if the context is the objection to a filed claim rather than the filing of the claim. Lyondell filed numerous pleadings stating its opposition to the Baldwins' claimed entitlement to an administrative expense and its intent to oppose such an entitlement.  The result of a finding in the Baldwins' favor would also be "potentially devastating":  a $1.325 million payment from the debtor's estate, based on vague and unsubstantiated allegations of injury.  Given the similarity of interests at stake between the circumstances here and those that at play in an informal proof of claim case, if there were a failure to follow the appropriate procedural requirements this Court should still allow the objection by Lyondell to stand as, in essence, an informal claims objection.

Finally, even if this Court decides that Lyondell made a procedural error in its objection to Claim 280692, there are no grounds for a reversal of the Bankruptcy Court's ruling.  An appellate court does "not reverse for reasons that do not affect the substantial rights of parties." *In re Garvida*, 347 B.R. 697, 704 (B.A.P. 9th Cir. 2006); 28 U.S.C.A. § 2111 (West)  ("On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record *without regard to errors or defects which do not affect the substantial rights of the parties*.") (emphasis added).  The alleged substantial right affected by the Bankruptcy Court's recognition of Lyondell's objections was a right to automatic payment of Claim 280692 – which is simply not a right the Baldwins had under the Plan, but an invention of their own making. Otherwise, the Baldwins' grievances concern procedural defects, which, if they existed, were rendered meaningless because the Baldwins were given ample opportunity to

articulate, and then defend, their claims through the filing of a complaint.  Any procedural error in the claims objection process was harmless and cannot be grounds for reversal.

**B.     THE BALDWINS ARE NOT ENTITLED TO PAYMENT OF AMOUNTS ACCRUING FROM OCTOBER 1, 2009 THROUGH THE REJECTION DATE BECAUSE THEY CEASED TO KEEP THE SETTLEMENT AGREEMENT CONFIDENTIAL**

The Baldwins argue that Lyondell continued to receive benefits under the Settlement Agreement from the filing of the Bankruptcy Case until Lyondell rejected it.  They, thus, contend that they are entitled to an administrative expense priority for the monthly payments accruing under the Settlement Agreement through the date of rejection, February 8, 2011.  Baldwin Brief at 14.  In making this argument, however, the Baldwins ignore the fact that they made the confidential settlement agreement public on October 1, 2013.  They cannot escape the consequences of this act.

The Bankruptcy Court found, and the Baldwins do not dispute, that the only benefit the Baldwins provided to Lyondell under the Settlement Agreement was keeping it confidential. R51, 4:14-21 ("I rule … that, for the first nine months of this case, the Baldwins provided a benefit to Lyondell, maintaining the confidentiality of a fourteen-year-old settlement"); *see also* R36, 60:19-22 ("I don't remember there being any other obligations on Mr. Baldwin's part [than to keep the Settlement Agreement confidential], other than to cash his checks, which of course is not by itself an obligation.").  The Baldwins also do not dispute that they made the Settlement Agreement public by filing it on October 1, 2009 and again on October 22, 2009.  R6 & R7. Information is confidential when it is "meant to be kept secret."  Black's Law Dictionary (9th ed. 2009).  By filing the Settlement Agreement on the public docket, the confidentiality of the agreement was no longer kept secret, and the only benefit being provided by the Baldwins to Lyondell ceased.

34

The Baldwins attempt to avoid this indisputable conclusion in three ways.  First, they claim that they did not *breach* the Settlement Agreement by making it public.  Baldwin Brief at 14 ("As clarified during the May 8 Hearing, the bankruptcy court never held that any activity which occurred during October, 2009 constituted "a legally cognizable breach of any kind" by the Baldwins.").  Whether violating the confidentiality provisions of the Settlement Agreement amounted to a breach is irrelevant, as stated by Judge Gerber himself: "I don't need to decide whether or not [publishing the Settlement Agreement] was a breach on their part or not.  I need only determine, *as is undisputed*, that they were no longer keeping it confidential after that date." R48, 62:1-4 (emphasis added).  The issue is whether the Baldwins continued to provide Lyondell with a benefit by keeping the agreement confidential.  *As is undisputed*, after October 1, 2009, they clearly did not.

Second, the Baldwins assert that, by Lyondell's own admission, it was not damaged by the disclosure.  Baldwin Brief at 15 ("At the hearing in November, 2010, in response to questioning by the bankruptcy court, Lyondell failed to allege any damage resulting from the actions by the Baldwins in October, 2009 which would reduce the value of the benefits it was continuing to receive from the [Settlement Agreement]").  The Baldwins are presumably referring to Lyondell's exchange with Judge Gerber regarding why Lyondell objected to the Baldwins' violation of the confidentiality requirements in the Settlement Agreement.  R25 at 19:13 – 21:2.  In that particular exchange, Lyondell was actually saying something quite different – that it did not regard the confidentiality provisions of the Settlement Agreement to be *material*, such that the Settlement Agreement would be an executory contract.  *Id*. at 19:23 – 20:2 ("[Y]our comments, Your Honor, about the debtors … equating to we thought that [confidentiality] was such an important provision that it was necessarily – it might rise to the

level of materiality is not the case.").  Lyondell certainly disputed, indirectly at that argument and directly in subsequent pleadings, that it received a benefit from the Baldwins' confidentiality at all.  *See e.g.* R48, 12:12 – 13:24, 17:9 – 19:12.  That does nothing to change the fact that the Baldwins' continued act of keeping the agreement confidential, which Judge Gerber did find to be a benefit to Lyondell, ceased to be provided in October of 2009.

Finally, the Baldwins appear to contend that Lyondell believed the terms of the Settlement Agreement continued to be confidential after October 2009, evidenced by Lyondell continuing to file the terms of the Settlement Agreement under seal.  Baldwin Brief at 15 ("Lyondell represented to the bankruptcy court numerous times that the Contract was still considered confidential information which must be placed under seal … in the February, 2011 Representation (citing R28, Lyondell's motion to file the claims objection under seal)").  It is true that Lyondell continued to file the Settlement Agreement under seal when it appeared as an exhibit to Lyondell's pleadings.  However, Lyondell's motivation was not to try to keep confidential something that the Baldwins had already made public.  Rather, as stated in its motions for leave to file the Settlement Agreement under seal, Lyondell was concerned that if it did *not* file the Settlement Agreement under seal the Baldwins might complain about *Lyondell's* disclosure of the document.  R28, ¶4 ("Although the Baldwins have already breached the Settlement Agreement by (twice) publicly filing the Settlement Agreement with this Court, the Reorganized Debtors wish to avoid any dispute about whether their actions … breach the Settlement Agreement.")  Regardless, Lyondell's own treatment of the Settlement Agreement does not help the Baldwins to put the confidentiality genie back into the bottle.  The Baldwins filed the Settlement Agreement publicly on October 1, 2009, and they cannot maintain a claim

for an administrative expense (benefit to the debtor's post-petition estate) premised on their keeping the Settlement Agreement confidential after that date.

## C.      THE BALDWINS ARE NOT ENTITLED TO INTEREST

The Baldwins claim they are entitled to interest on their administrative expense claims starting on February 1, 2011.  They further claim that the applicable rate of interest is 7.458%, the discount rate the parties used to calculate the present value of the stream of monthly payments due to the Baldwins as of Lyondell's Petition Date.

As demonstrated above and below, the Baldwins have no entitlement to an administrative expense claim beyond the $46,874.97 ordered by the Bankruptcy Court, which Lyondell has already paid.  R52.  Even if that were not the case, by virtue of this appeal, the Baldwins' claims have still not been allowed by final order, and were certainly not payable on February 1, 2011. Their claim to interest is predicated entirely on the success of other arguments in their brief, and should also be rejected.

Further, the Plan – under whose terms the Baldwins argue their claims should be "deemed allowed" – expressly disallows post-petition interest.  *See* R15, § 7.16 ("Unless expressly provided herein, the Confirmation Order, the DIP Financing Order, or any contract, Instrument, release, settlement or other agreement entered into in connection with the Plan, or required by applicable bankruptcy law (including the fair and equitable rule), postpetition interest shall not accrue on or after the Commencement Date on account of any Claim," where Claim is defined, as under Bankruptcy Code section 101(5), "a right to payment."[21]).

---

[21]    §101(5): The Term "claim" means

    (A)   right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or

    (B)   right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

The cases the Baldwins cite do nothing to bolster their case for entitlement to prejudgment interest. Each of the bankruptcy cases concern actions to recover preferential or fraudulent transfers, and interpret section 550(a) of the Bankruptcy Code – which exclusively concerns voidable transfers – to determine whether prejudgment interest is appropriate. 11 U.S.C.A. § 550 (West)[22]; *In re Hechinger Inv. Co. of Delaware, Inc.*, 489 F.3d 568, 579 (3d Cir. 2007); *In re Bruno Mach. Corp.*, 435 B.R. 819, 850 (Bankr. N.D.N.Y. 2010); *In re 1031 Tax Grp., LLC*, 439 B.R. 84, 87 (Bankr. S.D.N.Y. 2010). Moreover, the recipient in each of these cases is the *debtor*, not a creditor of the estate. The only case which the Baldwins cite that is not a voidable transfer dispute is in the non-analogous, non-bankruptcy context of a civil suit against a union for violating the Labor Management Relations Act, 29 U.S.C. § 401-531, a statute which is silent on the subject of prejudgment interest. *Wickham Contracting Co., Inc. v. Local Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO*, 955 F.2d 831, 836 (2d Cir. 1992).

Finally, the stipulated discount rate used to calculate the present value of the payments under the Settlement Agreement as of the Petition Date is clearly not the appropriate rate of interest here. That interest rate relates to Lyondell's cost of funds at the time of the commencement of these bankruptcy cases. January 2009 was a particularly difficult time in global credit markets carrying with it abnormally high interest rates, and it would simply be unfair to impose an anomalous interest rate on Lyondell for amounts the Baldwins claim became payable on February 1, 2011 – a full two years later. Further, there is a general presumption that the contract rate of interest will apply when a claim arises from a contract, provided that the creditor is entitled to interest. *See Matter of Southland Corp.*, 160 F.3d 1054, 1059-1060 (5th

---

[22] 550(a). Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553 (b), or 724 (a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

    (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

    (2) any immediate or mediate transferee of such initial transferee.

Cir. 1998) ("in the context of determining what interest rate to apply, another presumption did properly operate against [the debtor].  The cases find that a default interest rate is generally allowed, unless the higher rate would produce an inequitable ... result.") (internal citations and quotations omitted); *In re W.S. Sheppley & Co.*, 62 B.R. 271, 274 (Bankr. N.D. Iowa 1986) (holding "§ 506(b) should be construed to include reference to interest at the contract rate" subject to equitable principles of distribution).  Here, the Settlement Agreement itself contains an interest rate, which is to be determined as interest at the rate provided in an escrow account with the Texas Commerce Bank.  R6 Exhibit A § 13C.  Lyondell submits that, if the Baldwins had any entitlement to interest, it would be at this rate, and the interest rate on an escrow account with a bank would likely be a conservative figure at all conceivably relevant times, such as the average six-month interest rate on certificates of deposit, which has not exceeded 0.9% since 2008.[23]

## D.    THE BANKRUPTCY COURT CORRECTLY DISMISSED THE BALDWINS' CLAIMS RELATING TO THE FAILURE TO PROVIDE THE LETTER OF REFERENCE

In keeping with the theme of their brief, the Baldwins' final argument also seeks to obtain a seven figure payment without any scrutiny of the underlying basis for their claims.  This time, they take aim at the Bankruptcy Court's dismissal of their claim for alleged damages resulting from the delay in receiving the Letter of Reference from Lyondell.

The Bankruptcy Court subjected the Baldwins' claims, which it ordered they articulate in the form of a complaint, to the pleading standards established by the Supreme Court in *Twombly* and *Iqbal*.  As this Court is well aware, *Twombly* and *Iqbal* direct courts to disregard conclusory statements in pleadings, and to determine whether the surviving factual allegations "*plausibly*

---

[23]    *See* Board of Governors of the Federal Reserve System, Selected Interest Rates, Historical Data at http://www.federalreserve.gov/releases/h15/data.htm.

give rise to an entitlement to relief." *Iqbal*, 129 S.Ct. at 1950.  The Baldwins disagree that their claims should be subject to this pleading standard, and contend that the Bankruptcy Court erred in both holding that this standard applied and in finding that their 2012 Amended Complaint did not satisfy it with regard to the claim for damages arising from the delay in Lyondell providing the Letter of Reference.  Further, the Baldwins argue that Lyondell somehow waived its right to object to the Baldwins' failure to satisfy the pleading standards.

None of these arguments have merit.  *Twombly* and *Iqbal* plainly apply to complaints filed in bankruptcy, and Judge Gerber's instructions to the Baldwins to file a complaint emphasized that they would have to meet these pleading requirements.  The Baldwins failed to allege a theory of causation for their alleged injuries that had a modicum of plausibility or to provide any basis for their consequential damages claim, and cannot show that they provided a benefit to Lyondell that entitles them to an administrative expense priority for their claimed damages.  Finally, Lyondell objected to the sufficiency of the Baldwins' pleadings, and did not waive its right to do so.

### 1. *Twombly* and *Iqbal* apply to the 2012 Amended Complaint

The Baldwins seem to believe that, because their claims against the Lyondell estate were made in the context of a bankruptcy case and were first articulated as proofs of claim, they are not subject to the requirements of *Twombly* and *Iqbal*.  Baldwin Brief at 18 ("Such proofs of claim and requests for administrative expenses are not 'pleadings' within the purview of Rule 8(a)(2) or *Twombly* and *Iqbal*.").  They also argue that the Bankruptcy Court did not order them to proceed in an adversary proceeding, even though it ordered them to file a complaint that met the federal pleading rules, and accordingly their 2012 Amended Complaint was not subject to the pleading requirements for a complaint.  *Id*. at 19, n. 13 ("While the Bankruptcy Court required

the format of a complaint pursuant to [FRBP] 7008, 7009, and 7012, the Bankruptcy Court has also ruled that the claims by the Baldwins are not an adversary proceeding.").  Finally, they argue, without citing any support, that *Twombly* and *Iqbal* do not apply to "the quantum of damages or benefits," and that Judge Gerber erred in applying these standards to limit the Baldwins' recovery.  Baldwin Brief at 19 ("The bankruptcy court has evidently expanded the requirement that liability must be pleaded with specificity required by *Twombly* and *Iqbal* to encompass a new requirement that, in addition to liability, the quantum of damages or benefits must also be pleaded with specificity without any right of discovery by the damaged party.").

These arguments ignore the undisputed fact that Judge Gerber specifically ordered the Baldwins to file a complaint subject to the pleading standards governing complaints filed in federal court, that *Twombly* and *Iqbal* are clearly applicable to complaints in a bankruptcy case (including claims for damages), and that Lyondell put the Baldwins on notice of – and subsequently allowed them to amend their pleadings to address – their failure to meet the *Twombly* and *Iqbal* requirements.

When the parties' efforts at mediation had failed, and it became necessary to proceed to a judicial determination of the Baldwins' claims, the Baldwins had four claims on file.  These claims had been filed at various dates and under various overlapping and alternative theories and damage calculations.  See pages 6-7 above.  Because the Baldwins' filed proofs of claim made it impossible to "get [one's] arms around what the legal theory is under which Mr. Baldwin is proceeding [and] what facts underlie his contentions" (*see* R38 at 8:4-6 and 17-2), Judge Gerber directed the Baldwins to file a complaint to set out all of their claims, and specifically instructed that the federal pleading standard for complaints would apply: the Baldwins were to "flesh out each of your remaining claims with your complaint or complaints ... that complies with the

requirements of [Civil] Rule 8."  *See* R38, 8:19-22.  As this Court is well aware, Federal Rule of

Civil Procedure ("FRCP") 8 imposes pleading standards, and is the same rule that *Iqbal*

interprets.  Clearly, Judge Gerber required the filing of a complaint *in order to* benefit from

FRCP 8's pleading requirements.  In light of the Bankruptcy Court's reason for requiring that the

Baldwins file a complaint, the Baldwins' argument that they were not obliged to plead sufficient

facts to support a claim for relief is simply a refusal to comply with the Bankruptcy Court's clear

direction.

Once the Baldwins filed their complaint, it is indisputable that the *Iqbal* standards

applied.  *See e.g. In re Trinsum Group, Inc*., 460 B.R. 379, 383 (Bankr. S.D.N.Y. 2011)

(dismissing a complaint in an adversary proceeding because it failed to meet the pleading

standards of *Iqbal* and *Twombly*); *In re Dreier LLP*, 452 B.R. 391, 406 (Bankr. S.D.N.Y. 2011)

(applying *Iqbal* standards to assess the sufficiency of allegations in a complaint for avoidance

and recovery of a fraudulent transfer).  It is irrelevant that the Bankruptcy Court had, years

earlier, stated that the Baldwins could pursue their claims without an adversary proceeding,[24] or

that the Baldwins had previously filed proofs of claim.  After the Bankruptcy Court's December

14, 2011 order, the Baldwins were obligated to file a complaint, and to comply with the attendant

pleading standards.  R39.

Finally, in its own pleadings, Lyondell apprised the Baldwins of their need to satisfy

*Twombly* and *Iqbal*.  The Baldwins had filed, and Lyondell answered and moved for judgment

---

[24]   The Baldwins cite to R26 for their assertion that "The Bankruptcy Court has ruled that the claims by the
       Baldwins are not an adversary proceeding."  R26 is the order on Lyondell's Motion to Dismiss the complaint in
       the 2009 Baldwin Adversary on the Assumption Motion, and says nothing about whether the claims are an
       adversary proceeding.  Lyondell assumes that the Baldwins intended to cite to R25, the transcript of the hearing
       on the two aforementioned items, at which time Judge Gerber stated to Mr. Baldwin, "The way you prosecute a
       claim of [this] character is by a contested matter rather than an adversary.  You don't need an adversary."  R25,
       17:11-13.  This statement in no way precluded Judger Gerber from later ordering the Baldwins to file a
       complaint articulating their claims with the specificity required under FRCP 8 (made applicable by Rule 7008
       of FRBP).

on the pleadings on, the Baldwin's initial complaint. R40.  Lyondell's initial motion for

judgment on the pleadings clearly laid out the applicable pleading standards, including *Iqbal*, as

adopted in the Second Circuit in *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).  CD R13

at 9-10.  After the motion for judgment on the pleadings was served on (and presumably,

therefore, read by) the Baldwins, they requested that Lyondell consent to their filing an amended

complaint.  Lyondell consented.

  The Bankruptcy Court ordered the Baldwins to file a complaint that complied with the

federal pleading requirements, and referred specifically to the applicable rules that set forth those

requirements.  Lyondell moved for judgment on the pleadings, setting forth the requirements for

pleadings and pointing out in detail the Baldwins' failure to meet those pleadings requirements.

The Baldwins sought and received Lyondell's consent to amend their complaint – and blatantly

failed to plead sufficiently, even after being given a road map for how to do so.  The only logical

conclusion is that the Baldwins have failed to meet their burden because they cannot, or for their

own reasons will not, do so.

  **2.**  **The Amended Complaint failed to meet the *Twombly* and *Iqbal* requirements.**

  The Baldwins argue, presumably in the alternative, that their claim for damages arising

out of Lyondell's delay in providing the Letter of Reference for nine months in 2009 *does* meet

the requirements of *Twombly* and *Iqbal*, even if it was not required to.

  Regarding their argument for entitlement to a general unsecured claim, the Baldwins

assert that, by showing that Lyondell had an obligation to provide the Letter of Reference on

demand and that Lyondell breached this obligation, and by providing "a means of calculating the

extent of their damages based upon the expected loss of income over the working life of Mr.

Baldwin," they have satisfied the *Iqbal* pleading standards.  Baldwin Brief at 19.  The Baldwins

have, again, ignored the element of their claim that the Bankruptcy Court found lacking:

causation.  Without plausibly pleading this essential element of their breach of contract claim,

the Baldwins are simply not entitled to proceed any further in their effort to obtain a recovery.

The only allegations the Baldwins made concerning causation was that a single,

unidentified employment search consultant told Mr. Baldwin that he would not be able to obtain

his expected level of remuneration without "documentation" of his prior employment with

Lyondell, and that Mr. Baldwin ultimately accepted a position in May 2009 that was

"substantially less remunerative" than he had expected.  Baldwin Brief at 19, n. 14; R42 at 3.

This, however, was not an allegation of an employment opportunity that Mr. Baldwin lost in

2009 because Lyondell did not provide a letter about a job he had held in the mid-1990s.  There

was not even an allegation that Mr. Baldwin had been *asked* for the Letter of Reference by any

prospective employer, or was unable to apply for any job because he did not have the letter at the

time.[25]  Based on these allegations, therefore, it is simply implausible by *Iqbal* standards to

conclude that Mr. Baldwin suffered any damage by not receiving the Letter of Reference in

February 2009.  There are far more likely explanations for any allegedly diminished

remuneration than the lack of a letter confirming the job title, responsibility and salary for a job

Mr. Baldwin held nearly 15 years earlier, such as the general economic decline in 2008 through

2010 or the positions that Mr. Baldwin held in the intervening time.

Further, the Baldwins make no allegation to support any entitlement to consequential

damages for Mr. Baldwins' lost earnings over the next fifteen years.  The Baldwins have had the

updated Letter of Reference in their possession since the end of November 2009.  They do not

---

[25]   And, as noted earlier, there is no statement by the Baldwins that they did not receive the Letter of Reference when the Settlement Agreement was signed in 1994.  This continued dodge by the Baldwins suggests that they may have had the Letter of Reference all along, which would explain the lack of any pleading by them regarding causation that meets the Rule 7008 standards.

articulate any basis why, now that they have the Letter of Reference, they are still entitled to fifteen years of consequential damages for not having the Letter of Reference during a nine-month period in 2009.  Additionally, under Texas law, which the Baldwins believe applies here (Baldwin Brief at 19-20), consequential damages "are not recoverable unless the parties *contemplated at the time they made the contract* that such damages would be a probable result of the breach.  Thus, to be recoverable, consequential damages must be foreseeable and directly traceable to the wrongful act and result from it."  *Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 901 (Tex. 2011), *reh'g denied* (Oct. 21, 2011) (emphasis added).  The Baldwins make no allegation to support the idea that, in 1994, Lyondell foresaw that it could be liable – for over $1.2 million – for a nine-month delay in providing the Letter of Reference when demanded fourteen years after the execution of the Settlement Agreement.

Regarding their second claim, the Baldwins acknowledge that they have to demonstrate that Lyondell received a benefit from its failure to provide a Letter of Reference in order to sustain their claim for administrative expense priority.  Baldwin Brief at 20.  They attempt to do so by stating that "Lyondell has admitted that its refusal to provide the Letter of Reference was a deliberate ploy to negotiate a favorable resolution concerning other claims" and extrapolating from that the proposition that "Lyondell received a benefit by not providing the Letter of Reference in the form of such leverage."  *Id*. at 20, 21.

It is not clear, and the Baldwins offer no explanation for, how a claim for "bargaining leverage" can even qualify as a claim for "actual, necessary costs and expenses of preserving the estate," as required by section 503(b)(1)(A) of the Bankruptcy Code. 11 U.S.C. § 503(b)(1)(A).[26]

---

[26]  503(b).  After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502 (f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate including—

An expense is generally administrative only if the consideration supporting the claimant's right to payment was "both supplied to and beneficial to the debtor in possession *in the operation of the business*." *In re WorldCom, Inc.*, 308 B.R. 157, 166 (Bankr. S.D.N.Y. 2004) (quoting *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. 1986)) (emphasis added); *accord Supplee v. Bethlehem Steel Corp. (In re Bethlehem Steel Corp.)*, 479 F.3d 167, 172 (2d Cir. 2007).  The Baldwins offer no explanation of how any "bargaining leverage" Lyondell gained in its negotiations with the Baldwins had any effect on Lyondell's business, or even on its bottom line.

The Baldwins can offer no explanation because the alleged "bargaining leverage" was ephemeral, or even illusory.  Whatever Lyondell might have gained by withholding the Letter of Reference for nine months in 2009 it lost when it handed over the updated version of the letter in November 2009, no closer to a negotiated settlement with the Baldwins.  The case law regarding section 503(b)(1)(A) requires that the "services" a claimant provided must have afforded the debtor a "real benefit from the transaction" and holds that a "potential benefit is not sufficient." *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 482, 488 (Bankr. S.D.N.Y. 1991); *WorldCom, Inc.*, 308 B.R. at 166 (internal citations omitted).  Whatever potential value withholding the Letter of Reference may have had for Lyondell was lost, without being realized, when Lyondell ceased withholding it.

---

(i) wages, salaries, and commissions for services rendered after the commencement of the case; and

(ii) wages and benefits awarded pursuant to a judicial proceeding or a proceeding of the National Labor Relations Board as back pay attributable to any period of time occurring after commencement of the case under this title, as a result of a violation of Federal or State law by the debtor, without regard to the time of the occurrence of unlawful conduct on which such award is based or to whether any services were rendered, if the court determines that payment of wages and benefits by reason of the operation of this clause will not substantially increase the probability of layoff or termination of current employees, or of nonpayment of domestic support obligations, during the case under this title; …

Moreover, as the Baldwins themselves point out, the entire dispute with the Baldwins has imposed significant costs on Lyondell, thus providing the opposite of a benefit to the estate.  As noted in the Baldwin Brief, Lyondell has "incurred significant costs and expenses" in defending against the Baldwins' claims, including regarding the provision of the Letter of Reference. Baldwin Brief at 20.  The Baldwins appear to believe that this expenditure shows that Lyondell valued withholding the Letter of Reference, but in fact the vast majority of this expense was incurred well after Lyondell furnished the Letter of Reference.  From February 2009 when the Baldwins sent their demand for the letter until October 2009 when they commenced their adversary proceeding, Lyondell incurred no costs in ignoring the Baldwins' demands; and the one month of negotiations, pleadings and a status conference following the commencement of the adversary proceeding was only minimal in terms of legal costs.  Rather, it has been the years spent arguing over the Baldwins' claims since then that has been expensive for Lyondell.  The costs of defending against a creditor's baseless claims cannot be a measure of the "benefit" provided by the creditor.  If it were, no chapter 11 debtor could afford to defend against a determined opponent lest the act of defense be taken as evidence to be used against the debtor later – forcing it to bear those costs again as administrative expenses to be paid as damages to the creditor.

In sum, the Baldwins have failed to allege facts sufficient to plausibly support *any* claim against Lyondell for its failure to provide the Letter of Reference on demand, or to meet their burden in showing that such a claim, if sufficiently pled, would have administrative expense priority.  *In re Tower Automotive, Inc.*, No. 05-10578 (ALG), 2007 Bankr. LEXIS 2219, *8 (Bankr. S.D.N.Y. June 29, 2007) (the "burden of proving administrative priority falls upon the litigant seeking administrative status."); see also *McFarlin's* Inc., 789 F.2d at 100 ("Because the

47

presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors, statutory priorities are narrowly construed."). The Bankruptcy Court's dismissal of these claims should be affirmed.

### 3.      Lyondell did not waive the defects in the Baldwins pleadings

Lastly, the Baldwins briefly argue that, because Lyondell did not object to the factual deficiencies in the Baldwins' proofs of claim, Lyondell waived its right to object to those deficiencies in the complaint.   Baldwin Brief at 21.  This argument is without merit.

First, the Baldwins' proofs of claims in fact were found by the Bankruptcy Court to be insufficient to support a claim for relief, undercutting any argument that the deficiencies of the proofs of claim were somehow accepted by Lyondell.  As discussed above, the Bankruptcy Court ordered the Baldwins to articulate their claims in the form of a complaint, so that that it could "get its arms around" the basis for the claims and finally adjudicate them.  R38, 8:2-8; *see also* pages 41-42 above.

Second, the Bankruptcy Court specifically held that Rule 7008, as interpreted by *Iqbal* and *Twombly*, would apply to the complaint the Baldwins were required to file in 2012.  It is axiomatic that the party to challenge the sufficiency of the pleadings in a complaint is the defendant.  Consequently, when it made Rule 7008 apply to the Baldwins' complaint, the Bankruptcy Court confirmed Lyondell's continuing right to challenge the sufficiency of the allegations made against it.

Finally, Lyondell has opposed the Baldwins' efforts to recover on their baseless claims for years.  It has done do consistently since the Baldwins first asserted a claim in 2009 on the basis, among others, that the Baldwins failed to provide sufficient facts to support a legal claim for relief.  Consequently, the assertion that Lyondell somehow waived its rights to object to the

sufficiency of the Baldwins' pleadings when they filed their complaint is contradicted by the record in this case.  Every act of Lyondell in response to the claims asserted by the Baldwins is to the contrary.

## VI.

## CONCLUSION

In light of the foregoing, Lyondell respectfully requests that this Court affirm the Bankruptcy Court's Order.

Dated:  July 12, 2013             Respectfully submitted,
New York, New York

                                  /s/ Christopher Mirick_____
                                  Andrew M. Troop, Esq.
                                  Christopher R. Mirick, Esq.
                                  PILLSBURY WINTHROP SHAW PITTMAN LLP
                                  1540 Broadway
                                  New York, New York 10036
                                  Telephone: (212) 858-1000
                                  Facsimile: (212) 858-1500

                                  *Attorneys for Appellee Lyondell Chemical Company*