USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/11/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

In re:

LYONDELL CHEMICAL COMPANY, et al.,

      Post-Confirmation Debtors.

---------------------------------------------------------------X

C.A. BALDWIN and ANN L. BALDWIN,

                             Appellants,

           -v-

LYONDELL CHEMICAL COMPANY, et al.,

                             Appellees.

---------------------------------------------------------------X

No. 13 Civ. 3881 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

       C.A. and Ann Baldwin ("the Baldwins") appeal the judgment of the Bankruptcy Court (Robert E. Gerber, Bankruptcy Judge), awarding them an administrative expense of $46,874.97 and a general unsecured claim of $131,157.08 against Lyondell Chemical Company and certain of its affiliated entities, as reorganized debtors (collectively, "Lyondell"). Although the Baldwins are *pro se* on this appeal as they were in the Bankruptcy Court, Mr. Baldwin is an attorney who served as an associate general counsel for Lyondell until the mid-1990s. In connection with his departure from the firm, in 1994 the Baldwins and Lyondell executed a "Settlement Agreement, Full and Final Release and Covenant Not To Sue" (the "Settlement Agreement"). This appeal centers on whether the Bankruptcy Court properly handled the Baldwins' claims against the Lyondell estate arising from the Settlement Agreement.

       For the following reasons, the judgment of the Bankruptcy Court is affirmed.

## BACKGROUND

A brief summary of the case's complex procedural history is necessary to understand the legal issues this appeal presents.

**1.     The Settlement Agreement**

As noted above, in connection with Mr. Baldwin's departure from Lyondell,[1] the parties executed the Settlement Agreement on December 23, 1994. (Record on Appeal, document number 42 ("R42") ¶ 1.)[2] Three provisions in the Settlement Agreement are relevant to this appeal. First, Lyondell agreed to make monthly payments to the Baldwins in the amount of $5,208.33, with the final payment to be made on February 1, 2012. (Id. ¶ 5; R49 ¶ 3.)  Second, Lyondell agreed to provide Mr. Baldwin with a "letter of reference," which, as the Bankruptcy Court noted, was somewhat of "a misnomer," given that the agreed-upon text of that letter simply confirmed Mr. Baldwin's title, duration of employment, and salary, but did not endorse him. (R42 ¶¶ 3, 5; R52 ¶ 8.)  Third, the Baldwins were required to keep the terms of the Settlement Agreement confidential. (See id. ¶¶ 15-21.)

All parties performed their obligations under the Settlement Agreement through December 2008. (See, e.g., R36 at 75.)  Lyondell did not make the payment due on January 1, 2009, however, and filed its Chapter 11 bankruptcy petition five days later. (R42 ¶ 8; R49 ¶ 3.)  Consistent with the general prohibition on debtors paying prepetition obligations outside of a court-approved reorganization plan, Lyondell did not make further payments under the Settlement Agreement. (R42 ¶ 8.)

---

[1]     Technically speaking, Mr. Baldwin was employed by Lyondell's predecessor-in-interest, Lyondell Petrochemical Company, which is the entity that executed the Settlement Agreement. (R42 ¶ 1.)

[2]     Consistent with Federal Rule of Bankruptcy Procedure 8006, the Baldwins designated certain items for the record on appeal. Their designation of the record, available at docket entry 13 on this Court's docket, provides the corresponding number on the Bankruptcy Court's docket (No. 09-10023(REG)) where each document is accessible.

**2.      The 2009 Complaint**

On February 1, 2009, the Baldwins wrote to Lyondell's general counsel, requesting the letter of reference as described in the Settlement Agreement.  (R42 ¶ 10.)  Lyondell did not provide the letter until November 30, 2009, well after the Baldwins commenced litigation.[3]  (R51 at 11.)

The Baldwins filed their Complaint in Bankruptcy Court on October 1, 2009, alleging that the monthly payments Lyondell owed them under the Settlement Agreement were non-dischargeable and that Lyondell breached the Settlement Agreement by failing to provide the letter of reference.  (Id. ¶¶ 16-22.)  Attached to the Complaint, and filed on the public docket, was a copy of the Settlement Agreement.  (Id. Ex. A.)  Lyondell promptly contacted the Baldwins to request that they take steps to remove the Settlement Agreement from the public docket and threatened litigation for breaching the confidentiality provisions of the Settlement Agreement.  (R42 ¶¶ 16-17.)  The Baldwins did not take any steps to remove the Settlement Agreement as Lyondell requested.

On October 22, 2009, the Baldwins filed an Amended Complaint in Bankruptcy Court, alleging that Lyondell had assumed the Settlement Agreement by seeking to enforce the confidentiality provisions and that Lyondell had breached the terms of the Agreement.  (R7.)  The Baldwins again attached the Settlement Agreement as an exhibit.[4]  (Id.)  Lyondell moved to dismiss, and the parties fully briefed the motion.  (R9, R10, R13.)

Several events occurred while the motion to dismiss was pending.  The Baldwins filed a "Motion To Obtain Court's Approval for Debtor's Assumption of Executory Contract,"

---

[3]  The Bankruptcy Court later concluded that Lyondell's delay in providing the letter "scream[s] out intentional efforts to get a negotiating advantage, vindictiveness, or both."  (R51 at 11.)

[4]  The Settlement Agreement was removed from the public docket on October 27, 2009.  (R9.)

3

("Assumption Motion"), essentially asserting the same claim as alleged in the Amended Complaint—that Lyondell had assumed the contract. (R14.) Mr. Baldwin acknowledged that this motion was largely duplicative of the Amended Complaint, but explained that he filed the motion "in an abundance of caution to make sure I at least call it the right one." (R25 at 27:3-4.) Lyondell filed an opposition, and the parties fully briefed the motion. (R22, R24.)

Additionally, on April 23, 2010, the Bankruptcy Court confirmed Lyondell's Reorganization Plan. (R15, R20.) The Plan gave claimants until June 30, 2010 to file claims for administrative expenses. (R15 § 2.1(a).) The Baldwins timely filed a claim—Claim 280692—for an administrative expense of "at least $1,325,000.000." (R23.) They based this amount essentially on the value of the remaining payments under the Settlement Agreement plus Mr. Baldwin's alleged loss in earning potential based on Lyondell's delay in providing the letter of reference. (Id.)

After hearing oral argument, the Bankruptcy Court decided the motion to dismiss and Assumption Motion in a bench ruling issued on November 23, 2010, which was memorialized in a written order dated February 1, 2011. (R25-26.) The Bankruptcy Court concluded that the Settlement Agreement was an executory contract—that is, the type of contract that a debtor had the option of assuming or rejecting after filing for bankruptcy—and that Lyondell had neither assumed nor rejected the contract. (R26 at 2.) Accordingly, the Court dismissed the Amended Complaint in its entirety, and dismissed the Assumption Motion, except insofar as the Motion sought a declaration that the Settlement Agreement was an executory contract. (Id.) The Court gave Lyondell thirty days from the date of the order to assume or reject the Settlement Agreement and, in the event that Lyondell rejected the Settlement Agreement, gave the Baldwins thirty days from the date of rejection to file claims arising from that rejection. (Id. at 2-3)

4

On February 8, 2011, Lyondell formally rejected the Settlement Agreement, and the following day filed an objection to Claim 280692 (the Baldwins' previously-filed request for an administrative expense of "at least" $1.325 million).  (See R27, R29.)

**3.      The Motion To Enforce and the 2012 Complaint**

For reasons explained more fully in the next section of this Order, the Baldwins filed a Motion To Enforce the Confirmation Order, relying on a clause in the Reorganization Plan which provided that administrative expenses were "deemed allowed" unless Lyondell filed an objection by December 27, 2010—a date "subject to extensions from time to time by the Bankruptcy Court."  (R32 at 3-4 (quoting Reorganization Plan (R15) § 2.1(a)).)  The Baldwins argued that because Lyondell did not file an objection to Claim 280692 until February 9, 2011, they were entitled to at least $1.325 million in administrative expenses.  (R32 at 2-3.)

The Bankruptcy Court, referring to the Baldwins' position as "lunacy," rejected their arguments for two reasons.  (R36 at 83:5.)  First, the Bankruptcy Court noted that Lyondell argued in its briefing on the motion to dismiss and Assumption Motion that the Baldwins were not entitled to any administrative expenses.  (Id. at 83:8-84:10.)  Although Lyondell "should have expressly objected again," the Bankruptcy Court explained, Lyondell made its opposition clear both to the Court and to the Baldwins.  (Id. at 83:9-10.)  Second, the Bankruptcy Court concluded that it had the ultimate authority to review claims for administrative expenses, regardless of whether Lyondell failed to follow the procedure for objecting under the Reorganization Plan.  (Id. at 86:6-10.)  The Bankruptcy Court ordered the Baldwins to "flesh out" each of their remaining claims by filing "a complaint that complies with [Federal Rule of Civil Procedure] Rule 8."  (R38 8:19-22.)

The Baldwins filed the Complaint, which they amended in March 2012 (the "2012

5

Amended Complaint"); Lyondell answered and then moved for judgment on the pleadings. (R40, R42-R44.)

The Bankruptcy Court granted the motion in part and, after the parties stipulated to the remaining facts, issued its final opinion. (R48-R52.) It noted that despite its skepticism that Lyondell would be harmed by disclosure of Settlement Agreement, the company treated the Settlement Agreement as if it contained "nuclear launch codes." (R51 at 15:5.) The Bankruptcy Court thus determined that Lyondell received a benefit during the time that the Baldwins kept the Settlement Agreement confidential—a period that ended when the Baldwins publicly docketed the Settlement Agreement as an attachment to their 2009 Complaint on October 1, 2009. (Id. at 15:7-12.) Although the parties would normally proceed to discovery to ascertain the value of that confidentiality, the Court noted, Lyondell had instead chosen to stipulate that the value of any confidentiality was equal to the monthly payments due under the contract. (Id. at 15:13-24.) Because Lyondell obtained these benefits after the filing of their bankruptcy petition, the Court classified the nine months of payments—totaling $46,874.97—as administrative expenses. (Id. at 19:2-9; R52 ¶ 1.)

Concluding that Lyondell stopped receiving a benefit once the Baldwins publicly filed the Settlement Agreement—and that Lyondell did not otherwise assume the contract—the Court concluded that the Baldwins were entitled only to a general unsecured claim for the remaining payments due under the Settlement Agreement—which, when discounted to reflect the time value of money, totaled $131,157.08. (R51 at 21:14-17; 25:1-3.)

Finally, although the Bankruptcy Court chastised Lyondell for its delay in providing the letter of reference, the Court held that the Baldwins had failed plausibly to allege that this delay caused them damages. (R48 at 67:16-23.) The Bankruptcy Court noted that the 2012 Amended

Complaint alleged that an "employment search consultant" had advised Mr. Baldwin that "it would be impossible to obtain employment as an attorney at anywhere near the level of compensation reflecting his skills and experience unless he could provide documentation of his prior employment with Lyondell."  (Id. at 68:16-23 (quoting 2012 Amended Complaint (R42) ¶ 11).)  Without an allegation of a concrete job offer that Mr. Baldwin lost by his failure to confirm his employment at Lyondell—and with "nothing more than the musings of an employment counselor"—the Court concluded that claims for damages from the delay in providing the letter of recommendation did not satisfy the Twombly and Iqbal standard.  (R48 at 69:11-15.)  The Court dismissed all other claims.  (R52 ¶ 3.)

The instant appeal followed.

## DISCUSSION

When reviewing the decision of a bankruptcy court, a district court acts as an appellate court, reviewing the bankruptcy court's legal conclusions *de novo* and its factual findings for clear error.  In re Ionosphere Clubs, Inc., 922 F.2d 984, 988 (2d Cir. 1990).  Mixed questions of law and fact are reviewed *de novo*.  In re Vebeliunas, 332 F.3d 85, 90 (2d Cir. 2003).

**1.   Governing Law: Administrative Expenses and a Debtor's Right To Assume or Reject Contracts**

Section 365 of the Bankruptcy Code provides that a "chapter 11 debtor-in-possession may, with court approval, assume or reject any executory contract or unexpired lease of the debtor."  In re Penn Traffic Co., 524 F.3d 373, 378 (2d Cir. 2008) (citing 11 U.S.C. § 365(a)).  An "executory contract" is "one on which performance remains due to some extent on both sides."  Id. at 379.  The purpose of this provision, the Second Circuit has explained, is "to allow a debtor to reject executory contracts in order to relieve the estate of burdensome obligations while at the same time providing a means whereby a debtor can force others to continue to do business

7

with it when the bankruptcy filing might otherwise make them reluctant to do so." In re Chateaugay Corp., 10 F.3d 944, 954-55 (2d Cir. 1993).

Whether a debtor assumes or rejects a contract is important to creditors because it determines the priority the creditor's claims will be accorded.[5] "Damages on the contract that result from the rejection of an executory contract . . . must be administered through bankruptcy and receive the priority provided general unsecured creditors." N.L.R.B. v. Bildisco and Bildisco, 465 U.S. 513, 531 (1984). Generally speaking, then, the non-debtor party to a rejected executory contract will "receive only a fraction of the value of its claim." Penn Traffic, 524 F.3d at 378. If, on the other hand, the debtor elects to assume and continue performance under the contract, "it assumes the contract *cum onere* ["with the burden"], and the expenses and liabilities incurred may be treated as administrative expenses, which are afforded the highest priority on the debtor's estate." Bildisco, 465 U.S. at 531 (citation omitted). If the debtor elects to receive benefits under the contract while deciding whether to reject or accept, the debtor "is obligated to pay for the reasonable value of those services, which, depending on the circumstances of a particular contract, may be what is specified in the contract." Id. (citation omitted). The opposing party will be entitled to administrative expense priority for the benefits it provides under the contract during that period. See In re Old Carco LLC, 424 B.R. 650, 657 (Bankr. S.D.N.Y. 2010).

**2.   Whether Claim 280692 Was Properly Subjected to Judicial Review**

As noted above, the Reorganization Plan required that all requests for administrative expenses be submitted by June 30, 2012—the "Administrative Expense Bar Date"—and provided that Lyondell had "the right to object to any Administrative Expense within 180 days

---

[5]   For simplicity, the Court will refer to the debtor-in-possession as the debtor. See, e.g., Penn Traffic, 524 F.3d at 378 n.3.

after the Administrative Expense Bar Date, subject to extensions from time to time by the Bankruptcy Court." (R15 § 2.1(a).) The Reorganization Plan further provided that "[u]nless the Debtors or the Reorganized Debtors object to a timely-filed and properly served Administrative Expense, such Administrative Expense shall be deemed Allowed in the amount requested." (Id.) Once an administrative expense was deemed "Allowed," it was to be paid at the end of the following month. (Id.)

The Baldwins argue that because Lyondell did not object to Claim 280692 until February 9, 2011—outside the 180-day objection period, which expired on December 27, 2010—the Reorganization Plan requires that their administrative expense request for $1.325 million be "deemed Allowed" and payable without judicial scrutiny. (Appellant's Br. 10.)

This argument fails because it ignores the context surrounding the Baldwin's filing of Claim 280692. This is not a scenario in which a creditor submitted a single, isolated claim and had no other interaction with the bankruptcy estate. Rather, the Baldwins filed Claim 280692 in the midst of a hotly contested adversarial proceeding: on the date the claim was filed, the Baldwins' 2009 Complaint and Assumption Motion were pending before the Bankruptcy Court, as were Lyondell's briefs asking the Court to dismiss the complaint and deny the motion. The assertion underlying the Baldwins' 2009 Complaint and Assumption Motion—as Mr. Baldwin acknowledged—was that their claims were entitled to priority over other creditors who had entered into contracts with Lyondell before the firm petitioned for bankruptcy. (See R11 at 15:7-20.)

Lyondell made clear its opposition to this position and asserted that the Baldwins should be treated the same as any other prepetition creditor. In particular, Lyondell's motion to dismiss the 2009 Complaint argued that the "payments that are the subject of the Amended Complaint

9

are indisputably prepetition claims," (R9 ¶ 17), and Lyondell's reply brief reiterated that point, (see R13 at 3).  By asserting that the Baldwins had only "prepetition" claims, Lyondell was arguing that the Baldwins were not entitled to administrative expense priority.  See, e.g., In re Klein Sleep Prods., Inc., 78 F.3d 18, 26 (2d Cir. 1996) ("[T]he only way in which prepetition claims are treated differently from postpetition claims is that the former are classified as general claims, whereas the latter—arising, for example, from . . . contracts entered into by the trustee or debtor-in-possession—are entitled to administrative expense priority.").  Lyondell made this point even more explicitly in its opposition to the Assumption Motion, noting: "Plaintiffs may be asking for an administrative priority claim for some unspecified period of time.  Plaintiffs are not entitled to one because they have failed to show an actual, concrete, discernible benefit received by Lyondell."  (R22 at 4 n.5.)

The Baldwins therefore had adequate notice that Lyondell opposed any assertion of administrative expense priority.  Even assuming, however, that these statements did not amount to an objection under the Reorganization Plan—either because the statements were made before the Baldwins filed Claim 280692, or because the assertions were made in a brief instead of on the official bankruptcy form (see Appellant's Br. at 12-13)—the Baldwins' argument fails for another reason.

The Reorganization Plan provided that the 180-day objection deadline was "subject to extensions from time to time by the Bankruptcy Court."  (R15 § 2.1(a).)  Here, although the Bankruptcy Court did not explicitly grant Lyondell an extension of time to object to Claim 280692, the Bankruptcy Court's November 23, 2010 bench ruling—memorialized in an order dated February 1, 2011[6]—effectively extended Lyondell's time to object.

---

[6] The delay between the bench ruling and written order, according to Lyondell, was due to the intervening holiday and the parties' dispute over the form of the order.  (R36 at 53:17-23.)

This is so because the nature and viability of the Baldwins' claims under the Settlement Agreement depended on whether Lyondell had assumed or rejected the Settlement Agreement. See Bildisco, 465 U.S. at 531 (explaining that a rejected contract gives rise to a general unsecured claim, whereas a party to an assumed contract may assert administrative expense priority). If Lyondell had assumed the Settlement Agreement after filing for bankruptcy, then the Baldwins likely would have been entitled to an administrative expense claim (at least for the remaining payments under the Settlement Agreement). See id. If Lyondell instead had rejected the Settlement Agreement, then the Baldwins likely would have had only a general unsecured claim for the remaining payments (although they would have an administrative expense claim for any benefits Lyondell elected to receive while it was making its decision). Id.

As the Bankruptcy Court pointed out, Lyondell would have been prudent to file an objection to Claim 280692 or request an extension of time to do so. (R36 at 84:22-85:1.) Such an objection, however, would have been nothing more than a formality. The extent to which the Baldwins were entitled to an administrative expense claim depended on the Bankruptcy Court's conclusion as to whether Lyondell had assumed the Settlement Agreement. The Bankruptcy Court did not fully resolve this issue until its written order on February 1, 2011.

That order concluded that Lyondell had neither assumed nor rejected the Settlement Agreement, and gave the company thirty days to decide whether to assume or reject. (R26 at 2.) In the event that Lyondell rejected the Settlement Agreement, the order also gave the Baldwins thirty days from the rejection date to file a proof of claim "for any and all claims . . . arising from or related to the Settlement Agreement." (R26 at 3.) These provisions would have been meaningless if the Baldwin's $1.325 million administrative expense claim had already been "deemed accepted" and due for payment on January 31, 2011. Rather, the appropriate reading of

11

the Bankruptcy Court's order is that it reset the clock on all outstanding claims, gave Lyondell thirty days to decide whether to assume, and put forward a schedule for resolving claims that arose as a result of Lyondell's decision.

The Bankruptcy Court gave an additional reason for its holding that Claim 280692 was properly subjected to judicial review.  It held that case law interpreting Section 503(b) of the Bankruptcy Code—which provides that administrative expenses shall be allowed "[a]fter notice and a hearing," see 11 U.S.C. § 503(b)—required that administrative expense claims always be subject to judicial scrutiny, regardless of the language of the Reorganization Plan, (see R36 at 89:5-8 ("[T]he plan can't deprive me of my underlying powers and responsibilities as a judge to review requests for payment from the estate, especially claims seeking over a million dollars on a priority basis.").

The Court need not decide whether the terms of the Reorganization Plan are inconsistent with case law interpreting Section 503(b), in light of the conclusion that Lyondell filed a timely objection under the terms of the Reorganization Plan.  The Court does take note of cases that have subjected administrative expense claims to scrutiny even in the absence of an objection. See, e.g., In re Williams, 246 B.R. 591, 594 (B.A.P. 8th Cir. 1999) ("In contrast to proofs of claim filed under § 502, which are deemed allowed absent objection, an administrative expense claim is allowed only after determination by the court that the expense is allowable."); Guaranty Nat'l Ins. Co. v. Greater Kansas City Transp., Inc., 90 B.R. 461, 462 (D. Kan. 1988) ("[A]ppellant essentially argues that because no parties in interest objected to the validity or amount of the claim, appellant's claim must be allowed under section 502(a) as claimed, *i.e.*, as an administrative priority expense.  Appellant offers no authority for the proposition that the creditor, rather than the Bankruptcy Court, has authority to determine a claim's priority status.

Indeed, such a proposition is contrary to the Code's language and defies common sense."); Collier on Bankruptcy ¶ 503.04 (explaining that administrative expenses "are not 'deemed allowed' but rather must be actually allowed by court order").

The Second Circuit has instructed that "[b]ecause the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors, statutory priorities are narrowly construed." Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc., 789 F.2d 98, 100 (2d Cir. 1986). This admonition, considered alongside decisions holding that administrative claims must be subjected to judicial scrutiny, presents an additional reason for permitting judicial review of Claim 280692.

### 3. Whether the Baldwins Are Entitled to Payments Through the Rejection Date

The Bankruptcy Court determined that the Baldwins provided a "benefit" to Lyondell by preserving the confidentiality of the Settlement Agreement. (R51 at 20:4-7.) The Bankruptcy Court further concluded, however, that the Baldwins ceased to provide that benefit on October 1, 2009, when they filed the Settlement Agreement on the public docket as part of the 2009 Complaint. (R48 61:24-62:4.) The Baldwins argue that they continued providing this confidentiality benefit until Lyondell officially rejected the Settlement Agreement on February 8, 2011; therefore, they contend, they are entitled to an administrative expense claim for payments due through February 8, 2011, not just through October 1, 2009.

The Supreme Court in Bildisco explained that "[i]f the debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor-in-possession is obligated to pay for the reasonable value of those services." Bildisco, 465 U.S. at 531. Nowhere on appeal does Lyondell challenge the Bankruptcy Court's conclusion that the Baldwins provided a benefit by keeping the

settlement confidential from the date Lyondell filed its bankruptcy petition (January 6, 2009) through the Baldwins' filing of the 2009 Complaint on October 1, 2009. The only question is whether the Baldwins provided a benefit to Lyondell after October 1, 2009.

They did not. The Baldwins filed the Settlement Agreement on the public docket on October 1, 2009 as "Exhibit A" to the 2009 Complaint. (R6 at 6.) Then, on October 22, 2009, the Baldwins filed their 2009 Amended Complaint, again attaching the Settlement Agreement as "Exhibit A." The Settlement Agreement remained on the public docket—both as an exhibit to the 2009 Complaint and 2009 Amended Complaint—until October 27, 2009, when the Bankruptcy Court entered an order requiring the Baldwins to remove the Settlement Agreement from the public docket and file it under seal. (R8.)

Almost by definition, the Settlement Agreement was no longer confidential once the Baldwins filed it on the public docket. See, e.g., Baella-Silva v. Hulsey, 454 F.3d 5, 11 (1st Cir. 2006) ("Filing a document on the district court's electronic filing system is not consistent with keeping information confidential."). As the Bankruptcy Court correctly held—and as the Baldwins' brief appears to recognize, (Appellants' Br. at 14)—whether that disclosure amounted to a "legally cognizable breach" of the Settlement Agreement is not the issue, (R51 at 23:14-15). Rather, the only question is whether the Baldwins provided postpetition "benefits" or "services" to Lyondell. See Bildisco, 465 U.S. at 531. The Settlement Agreement was no longer confidential once the Baldwins filed it publicly, and the Baldwins have not articulated any other benefit they provided the Lyondell estate.[7]

The Baldwins are left to argue that even if Lyondell did not receive a benefit for the

---

[7] Lyondell asserted in its brief that the "Bankruptcy Court found, and the Baldwins do not dispute, that the only benefit the Baldwins provided to Lyondell under the Settlement Agreement was keeping it confidential." (Appellee's Br. at 34 (citing R51, 4:14-21 and R36, 60:19-22)). Nowhere in their reply do the Baldwins challenge this assertion or proffer any other postpetition benefit they provided to Lyondell under the Settlement Agreement.

14

twenty-seven days during which the Settlement Agreement was public, Lyondell received a benefit when it continued to argue that the Settlement Agreement was confidential and the Bankruptcy Court acquiesced by filing the document under seal. In particular, the Baldwins point to Lyondell's motion, made in February 2011, to file the Settlement Agreement under seal as an exhibit to the company's objection to Claim 280692. (Appellants' Br. at 15 (citing R28).) Lyondell made clear, however, that its motivation in filing that motion was "to avoid any dispute about whether [Lyondell's] actions in objecting to the Baldwins' claims breach the Settlement Agreement." (R28 ¶ 4.) Whatever Lyondell's reasons for seeking to file the Settlement Agreement under seal—whether to ensure that it could not be accused of breaching the Agreement or to reap the benefit of confidentiality—the Settlement Agreement had already been public for twenty-seven days. Although nothing in the record suggests that the Baldwins disseminated the Settlement Agreement beyond the Bankruptcy Court's docket, with that public filing the "genie [was] out of the bottle." Gambale v. Deutsche Bank AG, 377 F.3d 133, 144 (2d Cir. 2004) (declining to seal an order that had been "disseminated prominently"). Lyondell thus ceased to receive a benefit from the Baldwins after October 1, 2009.

**4.    Whether the Baldwins Are Entitled to Interest**

The Bankruptcy Court concluded that the Baldwins were entitled to an administrative expense for the nine months after the filing of the bankruptcy petition in which they preserved the confidentiality of the Settlement Agreement.[8] Because the parties agreed that the value of the confidentiality was $5,208.33 per month (the monthly payment due under the Settlement Agreement), the Bankruptcy Court awarded an administrative expense of $46,874.97 ($5,208.33

---

[8] Because the bankruptcy petition was filed on January 6, 2009 and the Baldwins maintained the confidentiality of the Settlement Agreement until the filing of the 2009 Complaint on October 1, 2009, the actual time period was slightly less than nine months. The parties stipulated, however, that the Baldwins were entitled to nine months' worth of payments. (R49 ¶ 4.)

times the nine months the Settlement Agreement remained confidential).  (R49 ¶ 4; R52 ¶ 1.)

The Baldwins assert that they are entitled to prejudgment interest on this amount. (Appellants' Br. at 15-17.)  This argument is inconsistent with the text of the Reorganization Plan, which provides:

> Unless expressly provided herein, the Confirmation Order, the DIP Financing Order, or any contract, Instrument, release, settlement or other agreement entered into in connection with the Plan, or required by applicable bankruptcy law (including the fair and equitable rule), postpetition interest shall not accrue on or after the Commencement Date on account of any Claim.

(R15 § 7.16.)  The "Commencement Date" is the date Lyondell filed its bankruptcy petition (see id. Art. I at p. 7), and a "Claim" is defined broadly to include any "right to payment" or "right to an equitable remedy, (see id. Art. I at p. 6 (citing 11 U.S.C. § 101(5)).  This language makes clear that the Baldwins are not entitled to interest accruing "on or after" the date Lyondell filed for bankruptcy.

The Baldwins assert that when Bildisco requires debtors to pay for the "value" of postpetition benefits or services the estate receives, the phrase "value" should include an adjustment for the time value of money.  (See Appellants' Br. at 15.)  In support of this position, they cite several cases awarding prejudgment interest under a bankruptcy statute, not relevant here, that uses the word "value."  (See id. (citing In re Hechinger Inv. Co. of Delaware, 489 F.3d 568, 579-80 (3d Cir. 2007); In re Bruno Mach. Corp., 435 B.R. 819, 850-51 (Bankr. N.D.N.Y. 2010)).  Although the Baldwins do not acknowledge the explicit language of the plan, one could construe their brief as arguing that prejudgment interest is "required by applicable bankruptcy law."

The Second Circuit has held, however, that the decision of whether to award prejudgment interest is committed to the discretion of the district court.  Wickham Contracting Co. v. Local

Union No. 3, 955 F.2d 831, 833 (2d Cir. 1992).  In making this decision, courts are to consider several factors, including "the need to fully compensate the wronged party for actual damages suffered," "considerations of fairness and the relative equities of the award," and "such other general principles as are deemed relevant by the court."  Id.; see also In re 1031 Tax Grp., LLC, 439 B.R. 84, 87 (Bankr. S.D.N.Y. 2010) (noting that "there is no specific reference to prejudgment interest in the Bankruptcy Code" and applying the Wickham factors).

An award of prejudgment interest therefore is not "required by applicable bankruptcy law," because district courts have discretion over whether or not to award prejudgment interest.  Even assuming that the Court were to apply the Wickham factors, however, they do not point in favor of an award of prejudgment interest.  The $46,874.97 that the Baldwins will receive—with administrative expense priority—is more than sufficient to compensate them for the nine months in which they kept the Settlement Agreement confidential.

**5.     Whether the 2012 Amended Complaint States a Claim for Damages Arising from Lyondell's Delay in Providing the Reference Letter**

The Bankruptcy Court concluded that although Lyondell's initial refusal to provide the letter of reference "looked petty and mean-spirited," there "were no facts pleaded showing a plausible claim for relief" for damages arising from the delay.  (R48 at 67:23-25.)  The Baldwins challenge this conclusion on two grounds.

### A.     Whether Twombly and Iqbal Apply

The Baldwins first argue that the Bankruptcy Court erred by applying Federal Rule of Civil Procedure 8—as construed by the Supreme Court's decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554-55 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 677-79 (2009)—to the 2012 Amended Complaint.  They assert that "[c]laims and requests for administrative expenses are governed by different requirements" and should not be held to the standard

17

articulated in Federal Rule of Civil Procedure 8.  (Appellants' Br. at 18.)

This argument fails.  Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7008 is explicit: "Rule 8 F.R.Civ.P. applies in adversary proceedings."  Even if the 2012 Amended Complaint is considered only a "contested matter" instead of an "adversary pleading,"[9] Bankruptcy Rule 9014(c) provides that certain procedural rules apply and permits courts "at any stage in a particular matter" to "direct that one or more of the other rules in Part VII [Bankruptcy Rules 7001 to 7056] shall apply."

Citing this provision, the Bankruptcy Court's December 12, 2011 Order instructed the Baldwins to file a complaint and explicitly provided that Bankruptcy Rule 7008 would apply. (R39 at 2.)  This Order memorialized the Bankruptcy Court's clear instructions at a conference on October 31, 2011, when Judge Gerber instructed the Baldwins to "flesh out each of [their] remaining claims" in "a complaint that complies with the requirements of Rule 8 [of the Federal Rules of Civil Procedure]."  The Bankruptcy Court properly subjected the 2012 Amended Complaint to the requirements of Federal Rule of Civil Procedure 8, and the Baldwins had ample notice that their 2012 Amended Complaint would be held to this standard.

### B.     Whether the 2012 Amended Complaint Plausibly Alleged Causation

The Baldwins next argue that even assuming Federal Rule of Civil Procedure 8 does apply, the 2012 Amended Complaint plausibly states a claim for over $1.2 million in damages arising from Lyondell's delay in providing the letter of reference.  (Appellants' Br. at 19-21.)

The Bankruptcy Court correctly concluded that the 2012 Amended Complaint failed to allege a connection "between any possible job and the failure to provide this letter."  (R48 at 69:10-11.)  The Baldwins attempted to allege causation in the 2012 Amended Complaint by

---

[9]   See Collier on Bankruptcy ¶ 9014.01 (explaining that "an objection to a claim" is a "contested matter" within the meaning of Bankruptcy Rule 9014).

asserting that

> On February 19, 2009 in a meeting with an employment search consultant, C.A. Baldwin was told that in light of the high unemployment at that time it would be impossible to obtain employment as an attorney at anywhere near the level of compensation reflecting his skills and experience unless he could provide documentation of his prior employment with Lyondell.

(R42 ¶ 11.) The 2012 Amended Complaint also alleges that Mr. Baldwin "was required to apply for and ultimately accept" a position "which was substantially less remunerative than would have been the case if the letter of reference had been provided." (Id. ¶ 12.)

Nowhere does the 2012 Amended Complaint allege any job offer that Mr. Baldwin had received but then lost because of Lyondell's failure to provide the letter of reference. Cf. Greenhill v. United States, 81 Fed. Cl. 786, 792-93 (Fed. Cl. 2008) (concluding that, where the complaint alleged that a potential employer rescinded a job offer based on defendant's failure to provide a neutral reference, plaintiff had plausibly alleged proximate cause). Indeed, the 2012 Amended Complaint does not even allege that any potential employer asked Mr. Baldwin for the letter of reference or that he was unable to apply for a job because he did not have the letter. The Bankruptcy Court concluded that "[w]e have nothing more than the musings of an employment counselor, an employment consultant. That, by itself, without more, is insufficient to state a claim for over a million dollars in damages." The Court agrees.[10]

---

[10] The Baldwins also assert that Lyondell has waived any defense based on Federal Rule of Civil Procedure 8 by not raising it earlier. This argument is meritless. Lyondell has consistently objected to the Baldwins' claims and, after the Baldwins filed the 2012 Amended Complaint, promptly filed a motion for judgment on the pleadings, asserting that the Baldwins failed plausibly to allege damages caused by the delay in providing the letter of reference. (See R44 ¶ 52.)

## CONCLUSION

For these reasons, the May 3, 2013 Order of the Bankruptcy Court is affirmed. The Clerk of Court is respectfully requested to close the case.

SO ORDERED.

Dated:  March 11, 2014
        New York, New York

_____
Ronnie Abrams
United States District Judge